**Wayne MEEKS, Deceased and Cynthia Costante, Petitioners,**

**v.**

**WORKERS' COMPENSATION APPEAL BOARD (LOUIS CICCONI AUTO BODY), Respondent.**

**LOUIS CICCONI AUTO BODY, Petitioner,**

**v.**

**WORKERS' COMPENSATION APPEAL BOARD (COSTANTE/ MEEKS), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs May 15, 1998.

Decided Sept. 14, 1998.

Reargument Denied Nov. 23, 1998.

John C. McFadden, Media, for petitioner.

Neil T. Dombrowski, Philadelphia, for respondent.

Before COLINS, President Judge, SMITH, J., and LORD, Senior Judge.

SMITH, Judge.

This matter involves cross-appeals filed by Cynthia Costante (Claimant) and Louis Cicconi Auto Body (Employer) from the order of the Workers' Compensation Appeal Board (Board) that affirmed in part and modified in part the decision of the Workers' Compensation Judge (WCJ) denying Claimant's fatal claim petition as it related to her and granting the petition on behalf of Claimant's two minor children. The Board concluded that the WCJ properly found that Claimant had failed to prove that she was decedent's common-law wife; that the WCJ's calculation of benefits for the children was incorrect; that statutory interest should have been awarded in the amount of 10 percent; and that an award of burial expenses was appropriate.

Claimant essentially questions whether the WCJ erred by failing to afford to her a rebuttable presumption that she and Wayne Meeks (decedent) entered into a common-law marriage based on her uncontradicted testimony and by requiring her to produce documentation in order to establish what was already presumed at law. Employer, on the other hand, questions whether the WCJ erred as a matter of law in finding decedent to be its employee and erred as a matter of law and fact in finding decedent to have been on Employer's premises and acting in the course of his employment at the time of the fatal injury.

### I.

Decedent was working at Employer's auto body shop when on August 23, 1989 he was involved in an altercation with an employee, Joseph Worrell, who had been relieved from work by Employer earlier that day because of substance abuse. Worrell stabbed decedent in the throat causing his death. Claimant claimed to be the widow of decedent and filed a fatal claim petition seeking benefits for herself and for the parties' two children. Employer denied the claim, stating that decedent was not his employee and that the incident did not occur where decedent worked. Claimant testified that she lived with decedent for seven years from 1983 until his death in 1989 and bore him two children. She stated that after discussing the financial costs with their parents they realized that they could not afford a wedding. She also stated that they agreed, however, to consider each other as husband and wife and that they made this agreement in the presence of Catherine Meeks, decedent's mother. Mrs. Meeks corroborated Claimant's account; she further testified that decedent introduced Claimant in public as his wife, and they attended events as husband and wife.

Claimant presented the testimony of Louis Cicconi, Sr., and Louis Cicconi, Jr., president and manager of Employer respectively, and Josh Kelly. Mr. Cicconi, Sr., testified that he did not consider decedent to be his employee but rather an assistant to Mr. Kelly, who was an independent contractor hired by Mr. Cicconi, Sr., to build a spray paint booth for the business. In an incident report provided to the police, however, Mr. Cicconi, Sr., stated that decedent was his employee, and he echoed this statement at Worrell's criminal trial in 1990. He also stated that decedent was not injured on the work premises because he was stabbed in front of Chick's Automotive, an automotive business located on property owned by Mr. Cicconi, Sr. Decedent was working in Employer's wings shop, which refinished airplane wings and was located next door to Chick's Automotive. Mr. Cicconi, Jr., corroborated his father's testimony. Mr. Kelly testified that he considered himself to be an employee of Mr. Cicconi, Sr; that he did not control what time he arrived or when he took breaks; that the business provided the tools and equipment used by decedent; that Mr. Cicconi, Sr., gave him cash to pay decedent; and that he was responsible for turning in decedent's hours to Mr. Cicconi, Sr.

The WCJ found credible Claimant's evidence that she and decedent were the parents of two minor children. He rejected Claimant's testimony as it related to the claim of a common-law marriage, and he stated that Claimant offered no documentary evidence to prove that a common-law marriage existed. The WCJ found Mr. Kelly's testimony to be credible that decedent was an employee of Employer and that the injury occurred on Employer's premises. Both parties appealed, and the Board affirmed the

WCJ as to the denial of benefits to Claimant but modified the WCJ's decision to reflect a change in benefits to the two minor children from $151 to $158.40 per week and to award statutory interest and burial expenses.[1]

■ A party claiming common-law marriage to another must offer proof of an actual intention of the parties to form a marriage contract. *Bowden v. Workmen's Compensation Appeal Board*, 31 Pa.Cmwlth. 476, 376 A.2d 1033 (Pa.Cmwlth.1977); *Estate of Rees*, 331 Pa.Super. 225, 480 A.2d 327 (Pa.Super.1984). The Court in *Giant Eagle v. Workmen's Compensation Appeal Board (Bahorich)*, 144 Pa.Cmwlth. 552, 554–555, 602 A.2d 387, 388 (Pa.Cmwlth.), *appeal denied*, 533 Pa. 614, 618 A.2d 403 (1992), stated that "a rule of law has developed which allows evidence of reputation of marriage and cohabitation to create a rebuttable presumption of common law marriage." The courts may resort to this presumption only when direct evidence of an alleged marriage agreement is unavailable. *Id.* In *Estate of Rees*, 331 Pa.Super. 225, 480 A.2d 327 (Pa.Super.1984), the Superior Court stated that words uttered in *praesenti* sufficient to demonstrate a definite agreement to marry usually are required to establish a common-law marriage.

Claimant contends that her cohabitation with decedent and their reputation of marriage created a rebuttable presumption of a common-law marriage and that she satisfied her burden of proof through the testimony that she presented. Claimant and Mrs. Meeks testified that family members and other associates were aware of the marriage, and Mr. Kelly testified that Claimant was introduced to Mr. Cicconi, Sr., as decedent's wife at the time of decedent's injury. The WCJ offered Claimant an opportunity to present documentary evidence to prove the existence of her purported marriage; however, she could only produce a check-cashing card showing the name Cynthia Meeks. The death certificate listed her as decedent's wife. After the close of the record, Claimant pro-duced an IRS mailing label which the WCJ rejected as evidence.

■ Because Claimant offered testimony which met the definition of common-law marriage in Pennsylvania, the WCJ erred in rejecting her claim. The existence of a common-law marriage is a mixed question of law and fact, *Duggan v. Workmen's Compensation Appeal Board (Litchfield Township)*, 131 Pa.Cmwlth. 184, 569 A.2d 1022 (Pa. Cmwlth.1990), and the rule has developed over a period of time that evidence of reputation of marriage and cohabitation may create a rebuttable presumption of common-law marriage. *Giant Eagle*. Claimant asserts that she has met this standard and that the WCJ erred in failing to afford to her the rebuttable presumption of common-law marriage. The Court agrees, and the Court further holds that Claimant was not required to produce any further documentary evidence of marriage as the WCJ required. Claimant makes a valid assertion that the whole notion of common-law marriage presumes that documentary evidence usually does not exist, such as a marriage license or written contract, to prove the existence of a lawful marriage. In sum, the Court determines that Claimant's claim for spousal benefits must be honored by the Board.

## II.

As for decedent's employment status, Employer contends that Mr. Kelly supervised and controlled decedent's work and that he was actually the employee of Mr. Kelly. Citing *Hammermill Paper Co. v. Rust Engineering Co.*, 430 Pa. 365, 243 A.2d 389 (1968), Employer argues that the Court should be guided by the factors listed in that case which the Supreme Court determined were helpful in determining whether an employee/employer relationship exists. They include, among other things, control of the manner in which the work is to be done; the terms of the agreement between the parties; the nature of the work or occupation; the skill required for performance;

---

1. In reviewing the Board's order, the Court is limited to determining whether constitutional rights were violated, whether an error of law was committed and whether necessary findings of fact are supported by substantial evidence in the record. *Russell v. Workmen's Compensation Appeal Board (Volkswagen of America)*, 121 Pa. Cmwlth. 436, 550 A.2d 1364 (Pa.Cmwlth.1988).

which party supplies the tools; whether payment is by time or by the job; and whether the alleged employer has a right to terminate the employment at any time. *Id.* Claimant argues that "the right to control the manner in which the work is accomplished is the most persuasive indication of the presence or absence of the employer/employee relationship," citing *Southland Cable Co. v. Workmen's Compensation Appeal Board (Emmett)*, 142 Pa.Cmwlth. 612, 616, 598 A.2d 329, 331 (Pa.Cmwlth.1991), and she states that the WCJ properly found that decedent was an employee.

The WCJ is the ultimate fact-finder, and credibility determinations are within the sole discretion of the WCJ to make and will not be disturbed by the Court unless they are unsupported by the evidence. *Bethenergy Mines, Inc. v. Workmen's Compensation Appeal Board (Skirpan)*, 531 Pa. 287, 612 A.2d 434 (1992); *Spring Gulch Campground v. Workmen's Compensation Appeal Board (Schneebele)*, 148 Pa.Cmwlth. 553, 612 A.2d 546 (Pa.Cmwlth.1992). Mr. Kelly testified that Mr. Cicconi, Sr., set his and decedent's work hours; that he met with them every day at the project; that he retained and exercised the power to send them home or to terminate their employment at any time; that they had worked for him on a number of projects since 1987; and that he always paid his employees who did construction work for him in cash. The WCJ found this testimony to be credible while rejecting Employer's testimony, and the Court is bound by this credibility determination.

Citing *Epler v. North American Rockwell Corp.*, 482 Pa. 391, 393 A.2d 1163 (1978), Employer argues that the critical factor in determining whether an injury occurred on an employer's premises is not the employer's title to or control over the area, but whether the employer caused the area to be used by its employees in the performance of their assigned tasks. In response, Claimant argues that decedent was "on the job" when Worrell returned to the premises to continue a fight which the two had engaged in earlier that day. Furthermore, she correctly asserts that once decedent was found to be on the job furthering Employer's business, the exact location of the fatal injury is irrelevant. *See Motion Control Industries v. Workmen's Compensation Appeal Board (Buck)*, 145 Pa. Cmwlth. 399, 603 A.2d 675 (Pa.Cmwlth.), *appeal denied*, 531 Pa. 658, 613 A.2d 562 (1992) (decedent's fatal injury held compensable regardless of whether he sustained the injury on the employer's premises).

■ The attack on decedent began at the wings shop and ended next door in front of Chick's Automotive, which the WCJ found to be a part of Mr. Cicconi, Sr.'s greater corporation. The Court concludes that the WCJ properly found that decedent was on Employer's premises and acting in the course of his employment when the attack occurred.[2] Moreover, the Court rejects Employer's contention that compensation should be barred because decedent was on his lunch break when the fatal assault occurred, citing *Cozza v. Workmen's Compensation Appeal Board*, 34 Pa.Cmwlth. 605, 383 A.2d 1324 (Pa. Cmwlth.1978). The WCJ did not find that

---

**2.** Employer also maintains that compensation should be denied because decedent was injured due to personal animosity directed toward him by Worrell, citing *Cawley v. American Railway Express Co.*, 276 Pa. 160, 120 A. 108 (1923). In *Cawley* the Court held that compensation would be barred when an employee is injured as the result of a personal assault, unrelated to the employment. Claimant counters that it is the employer who bears the burden of establishing the personal animosity defense, citing *Bachman Co. v. Workmen's Compensation Appeal Board (Spence)*, 683 A.2d 1305 (Pa.Cmwlth.1996). Employer failed to meet its burden; the WCJ rejected Mr. Kelly's statements relating to the incident and rejected the account provided by Mr. Cicconi, Sr., and his son.

Lastly, Employer argues that the Act precludes compensation to individuals where their injury results from a violation of the law. *Lomax v. Workmen's Compensation Appeal Board (Mitchell)*, 121 Pa.Cmwlth. 371, 550 A.2d 866 (Pa. Cmwlth.1988). In *Lomax* the Court stated that the employee's violation of the law must be proven by the employer by more than a "preponderance of the evidence" but less than the "beyond a reasonable doubt" standard. The WCJ relied on statements given by Mr. Cicconi, Sr., and his son to the police. The Court finds nothing in those statements or otherwise in the record to establish the proof required under *Lomax*.

decedent was on his lunch break at the time of death; to the contrary, the testimony established that decedent had returned to the job site from lunch when the fatal assault occurred. Accordingly, the Court reverses that part of the Board's order affirming the WCJ's denial of fatal claim benefits to Claimant and remands on this issue for a computation of benefits. The Court affirms the Board's order in all other respects.

### ORDER

AND NOW this 14th day of September, 1998, the order of the Workers' Compensation Appeal Board is hereby reversed in part as to the spousal claim for benefits, and the matter is remanded on this issue for further proceedings consistent with the foregoing opinion. The Court otherwise affirms the Board's order.

Jurisdiction relinquished.