**ALLISON PARK CONTRACTORS,
INC. and Valley Forge Insurance
Company, Petitioners**

v.

**WORKERS' COMPENSATION AP-
PEAL BOARD (Stephen M. WAG-
NER, Deceased), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs April 1, 1999.
Decided May 25, 1999.

Steven L. Morrison, Pittsburgh, for peti-
tioners.

Chris Michael Temple, Pittsburgh, for
respondent.

Before McGINLEY, J., FLAHERTY,
J., and RODGERS, Senior Judge.

McGINLEY, Judge.

Allison Park Contractors, Inc. (Employ-
er) and Valley Forge Insurance Company
(Valley Forge) seek review of the order of
the Workers' Compensation Appeal Board
(Board) that reversed the denial by the
Workers' Compensation Judge (WCJ) of
Louise A. Herczeg's (Claimant) fatal claim
petition.

On March 20, 1995, Stephen Wagner
(Decedent) suffered a work-related injury
as a result of an industrial accident. Pur-
suant to a notice of compensation payable
Decedent received benefits in the amount
of $509.00 per week based upon an average
weekly wage of $821.48. On May 24, 1995,
Decedent died as a result of his injury.

On October 11, 1996, Claimant peti-
tioned for compensation benefits and al-
leged that Decedent died of asphyxiation
due to compression as a result of "Employ-
er, engineer and/or owner negligently ex-
cavat[ing][a] trench without shoring which
resulted in [a] cave-in while decedent was
working . . . and buried decedent." Fatal
Claim Petition, October 11, 1996, at 1;

Reproduce Record (R.R.) at 3a. Employer denied it was negligent and that Claimant "was the spouse of decedent" and that "[t]o the contrary, while the decedent and claimant did cohabit residence, there is no evidence that they were footing [sic] themselves out as man and wife." Answer, November 12, 1996, at 1–2; R.R. at 5a–6a.

In support of her petition, Claimant testified that she lived with Decedent from September of 1993 until his death on May 24, 1995. Claimant stated they considered themselves husband and wife, they shared a joint credit card, bank account and purchased a car in joint names in 1995. Claimant also stated that they exchanged wedding vows at a colonial festival on September 11, 1994.

Claimant also introduced into evidence an order of the Court of Common Pleas of Allegheny County that provided:

> **WHEREAS**, as a result of the status conference and subsequent discussions among counsel for the parties, [Claimant and Patricia A. and William P. Wagner, parents of Decedent] the parties have determined that a resolution of this matter by consent is fit and proper;
>
> **NOW THEREFORE**, based on the consent of the parties, the Court hereby orders as follows:
>
> 1. Louise Herczeg [Claimant] was, at least as of September 11, 1994, married to Stephen M. Wagner [Decedent] up to and at the time of his death on May 24, 1995.
>
> 2. Any representations by William P. or Patricia A. Wagner that Stephen M. Wagner was single or unmarried at the time of his death was based upon an error or mistake of law.
>
> 3. For any purposes, including without limitation, the administration of Stephen M. Wagner's [Decedent] estate, Louise Herczeg [Claimant] is, and shall be deemed, to be the widow of Stephen M. Wagner [Decedent].

Order on Consent, September 24, 1996, at 2–3.

Employer presented the testimony of Dr. Carl F. Robertson (Dr. Robertson), a professional counselor and an ordained minister. Dr. Robertson testified that he owns and promotes the Providence Plantation Colonial Festival (festival), an annual event held in September. Dr. Robertson stated that Claimant and Decedent participated in an eighteenth century colonial wedding ceremony held during the September 1994, festival. Dr. Robertson told Claimant and Decedent that the marriage ceremony had no legal validity and "would be part of the reenactment event unless they got the prescribed legal requirements satisfied, namely the blood tests and the license." Notes of Testimony, February 19, 1997, (N.T. 2/19/97) at 10; R.R. at 61a. Dr. Robertson stated that Claimant contacted him after Decedent's death and requested a letter reciting that he performed an "actual legal marriage ceremony...." N.T. 2/19/97 at 12; R.R. at 63a. Dr. Robertson declined to do so.

The WCJ made the following pertinent findings of fact:

> 5(i) Claimant testified that she only talked to Reverend Carl Robertson, who performed the mock ceremony, one time before the ceremony. She explained that she and Mr. Wagner's wedding was planned for September of 1995 and the ceremony at the festival was done on a whim and had not been planned. (06/17/97 NT, pp. 6–7). When asked whether she represented to friends and family that she and Mr. Wagner [Decedent] lived together as husband and wife, Claimant stated that "(I)n conversations, I would mention that we *acted like* husband and wife." She claimed that her husband introduced her to others as his wife but, when others questioned when they had been married, he would tell them they were not married yet. (06/17/97 NT, pp. 8–9 [emphasis added] ). She conceded she represented they were engaged. (11/19/96 NT, p. 37).
>
> . . . .

7. Claimant offered into evidence the September 24, 1996 order of the Honorable Judge Donald Machen of the Court of Common Pleas of Allegheny County, Family Division stating that claimant was the common law wife of Stephen Wagner [Decedent].... However, with all due respect, this judge finds that the Court of Common Pleas does not have jurisdiction over workers' compensation matters. Further, the Order is based upon evidence not of record in the present proceedings and upon statements made by the parents of the deceased, who are not parties to the present action, nor was their testimony offered.

8. In consideration of the evidence of record, this Judge finds that the claimant has failed to meet her burden of proving that she was the common law wife of the decedent Stephen Wagner, and the claim should be denied.

WCJ's Decision, August 19, 1997, Findings of Fact (F.F.) Nos. 5(i), 7 and 8 at 5–6.

The Board reversed the WCJ's decision and concluded:

The issue before the WCJ, however, was whether Claimant was the spouse of Decedent, and this had previously been decided by the Court of Common Pleas in Claimant's favor. The Act does not contain a definition of marriage which is unique to the Act that would require a separate ruling for the Act's purposes. We can determine no authority in the Act which would permit a WCJ to nullify a legally sanctioned marriage. We determine that the WCJ erred in finding

that Claimant was not the wife of Decedent.

Board's Decision, November 23, 1998, at 4.

■ On appeal Employer contends that the consent order of the common pleas court is not binding in the present proceedings where the parties and issues are not identical.[1] The existence of a common law marriage is a mixed question of law and fact. *Meeks v. Workers' Compensation Appeal Board (Louis Cicconi Auto Body)*, 720 A.2d 162 (Pa.Cmwlth.1998).

■ Initially, Employer contends that that the consent order was not binding upon the parties in the present workmen's compensation proceeding because there was no evidentiary hearing and adjudication by the common pleas court that Claimant was the common law wife of the Decedent.[2] We agree.

In *GPU Industrial Intervenors v. Pennsylvania Public Utility Commission*, 156 Pa.Cmwlth. 626, 628 A.2d 1187, 1194–95 (1993) this Court reviewed the Restatement (Second) of Judgments § 27(e) (issues not actually litigated) (1980) and noted:

Pennsylvania law clearly is consistent with the Restatement (Second) position that entry of a consent judgment does not constitute a 'determination' by the court of the matters in controversy. In *Commonwealth v. United States Steel Corp.*, 15 Pa.Commonwealth 184, 190–91, 325 A.2d 324, 328 (1974) (en banc), involving an appeal from a court's order in a proceeding to enforce a consent decree

---

1. This Court's review is limited to a determination of whether constitutional rights were violated, whether an error of law was committed and whether necessary findings of fact are supported by substantial evidence. *Boehm v. Workmen's Compensation Appeal Board (United Parcel Services)*, 133 Pa. Cmwlth. 455, 576 A.2d 1163 (1990).

2. Employer also contends that the doctrine of collateral estoppel is applicable. Our Pennsylvania Supreme Court in *Balent v. City of*

*Wilkes–Barre*, 542 Pa. 555, 564, 669 A.2d 309, 313 (1995) defined collateral estoppel:

Collateral estoppel or issue preclusion, is a doctrine which prevents re-litigation of an issue in a later action, despite the fact that it is based on a cause of action. The identical issue must have been necessary to final judgment on the merits, and the party against whom the plea is asserted must have been a party, or in privity with a party, to the prior action and must have had a full and fair opportunity to litigate the issue in question. (citations omitted).

entered pursuant to an agreement among the owner of a coke by-product plant, the Commonwealth and a county, the court stated:

> [T]he order of the court upon which the subject petition was based was a consent decree. The effect of such a decree was clearly stated in *Commonwealth v. Rozman*, 10 Pa.Commonwealth Ct. 133, [137,] 309 A.2d 197, [199] (1973): '*A consent decree is not a legal determination of the matters in controversy but is merely an agreement between the parties. It is in essence a contract binding the parties thereto. Universal Builders Supply, Inc. v. Shaler Highlands Corporation*, 405 Pa. 259, 175 A.2d 58 (1961).' (emphasis added).

Here, the parties before the common pleas court were Claimant and William P. and Patricia A. Wagner (the Wagners), parents of Decedent. Employer and its insurance carrier were not parties to the consent order. The common pleas court's determination that Claimant was the common law wife of Decedent was arrived at by agreement between Claimant and the Wagners after a preliminary status confer-

ence and not as a result of an evidentiary hearing and adjudication.[3]

■ "A party claiming common-law marriage to another must offer proof of an actual intention of the parties to form a marriage contract." *Meeks*, 720 A.2d at 164. "[A] rule of law has developed which allows evidence of reputation of marriage and cohabitation to create a rebuttable presumption of common law marriage." *Giant Eagle v. Workmen's Compensation Appeal Board (Bahorich)*, 144 Pa.Cmwlth. 552, 602 A.2d 387, 388, *appeal denied*, 533 Pa. 614, 618 A.2d 403 (1992).

In the present controversy, Claimant testified that she met Decedent in July of 1993, and that they began living together in September of 1993. Claimant stated that she and Decedent exchanged wedding vows before an ordained minister at a colonial festival and that her immediate family was present.[4] Claimant also stated that Decedent introduced her to his friends as his wife[5] and that she had a joint credit card with Decedent.

■ In rebuttal, Dr. Robertson testified that he informed Claimant and Decedent that the marriage ceremony performed at

---

**3.** In *Matternas v. Stehman*, 434 Pa.Super. 255, 642 A.2d 1120, 1125 (1994) our Pennsylvania Superior Court cited *GPU Industries* and noted:

> Our case law has determined that in a situation involving a consent judgment, there has been no actual litigation of issues. Collateral estoppel does not attach, unless the agreement between the parties was manifestly intended to resolve a particular issue. See Restatement, Second, Judgments, § 27, comment e (1980). See also GPU Industries....

As noted earlier the parties to the consent order are not the same parties in the present matter.

**4.** Christopher M. Temple, Claimant's attorney, to Claimant:

> Q: Would you describe, please, what that ceremony was?
> A: It was a marriage ceremony. We had a minister, an actual minister in charge of the ceremony. We exchanged rings and vows.
> Q: For this particular ceremony, were any family members present?
> A: Yes.

> Q: As far as your family is concerned, who was present?
> A: My mother, my father, and my sister.
> Q: Were any of Stephen's family members present?
> A: His mother and his grandmother.
> Q: Were any friends present at this ceremony?
> A: Yes.

Notes of Testimony, November 19, 1996, (N.T. 11/19/96) at 11–12; R.R. at 17a–18a.

**5.** The WCJ to Claimant:

> Q: During that year prior to the ceremony at the fair, did you ever represent to friends or family that you felt that you were living together as husband and wife?
> A: Yes, we did. In conversations, I would *mention that we acted like husband and wife. Stephen often introduced me as his wife to friends.*

Notes of Testimony, June 17, 1997, (N.T. 6/17/97) at 8–9; R.R. at 98a–99a.

the festival was not valid but only a reen-actment of an eighteenth century colonial marriage. Also, Claimant acknowledged that she and Decedent scheduled a September 1995, wedding and planned to invite 200 people. N.T. 11/19/96 at 26; R.R. at 32a. Further, Claimant stated that she and Decedent filed single tax returns for the 1994 calendar year and they informed their social friends they were engaged.[6] Finally, Employer introduced a May 1996–April 1997 phone book that listed Claimant as Louise Herczeg and Decedent as Stephen Wagner. The WCJ's conclusion properly found that Claimant failed to sustain her burden that she was the common law wife of Decedent was not an abuse of discretion.

Accordingly, we reverse.

### ORDER

AND NOW, to with, this 25th day of May, 1999, the order of the Workers' Compensation Appeal Board in the above-captioned matter is reversed.

---

6. The WCJ to Claimant:
   Q: When you went out socially, how did you introduce him to other people?
   A: I introduced him as my husband-to-be.
   Q: Did you ever tell people that you were engaged?
   A: Yes.
   Q: Did you do that right up to the time of his death?
   A: Yes.
   N.T. 11/19/96 at 36–37; R.R. at 42a–43a.