## Nikitka's Estate.

64

Argued December 2, 1942. Before SCHAFFER, C. J.; MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*Max Rosenn,* with him *Alexander J. Laffey,* for appellant.

*J. S. Russin* and *J. Gordon Mason,* for appellees, were not heard.

OPINION BY MR. JUSTICE PATTERSON, January 4, 1943:

Nicholas (or Nickolay) Nikitka (or Mikitka), an illiterate coal miner who immigrated to this country from Russia, died intestate, a resident of Luzerne County, on August 11, 1939. Letters of administration were granted to Michael Yeosock, the undertaker and principal creditor of the estate, on September 7, 1939. At the audit of the first and final account of the administrator, filed

October 31, 1940, appellant, Veronica Patzi Nikitka, claimed she was the common-law wife of decedent and entitled to share, as his widow, in the distribution of the estate. This claim was resisted by Anna Nikitka and her two sons, Adam and Pavel, citizens of the Union of Soviet Socialist Republics, who claimed to be the wife and children of decedent by a marriage in Russia in 1907. The Orphans' Court of Luzerne County rejected the claim of appellant, upon a finding that she and the decedent were never married, and entered a decree in favor of the Russian claimants. This appeal was then taken.

Appellant admits no ceremonial marriage was ever performed, but urges there is on the record evidence of cohabitation and reputation from which the fact of marriage might properly be inferred. This contention must be rejected. As indicated in *McGrath's Estate*, 319 Pa. 309, 315, the rule which permits a finding of marriage duly entered into based upon reputation and cohabitation alone is one of necessity to be applied only in cases where other proof is not available. See also *Craig's Estate*, 273 Pa. 530, 533. In the present case the claimant was available to testify to the precise form of the alleged marriage contract between her and the decedent but this she did not do, from which it may properly be assumed that no contract was in fact entered into: *Appeal of Reading Fire Ins. & Trust Co.*, 113 Pa. 204, 207-08. Moreover, it has been held over and over again that where the claimant herself proves that no valid contract was actually entered into, evidence as to cohabitation and reputation is worthless. "Cohabitation and reputation are not marriage; they are but circumstances from which marriage may be presumed, but such presumption may always be rebutted and will wholly disappear in the face of proof that no marriage in fact had taken place": *Bisbing's Estate*, 266 Pa. 529, 531. On cross-examination appellant testified: "Q. Why didn't you and Mr. Nikitka

get married by a priest or squire or anybody? A. He say if he don't love me he won't live with me anyway. Q. You never insisted? A. I didn't object so we lived that way." This testimony, particularly when coupled with appellant's admission, on direct examination, that "I know he [the decedent] won't marry", is fatal to her case, under the doctrine of *Bisbing's Estate,* supra, for it negatives that a marriage was ever actually entered into, and, hence, no serious consideration can be given her claim, founded solely upon cohabitation and reputation. See also *Craig's Estate,* supra, 533; *McDevitt's Estate,* 280 Pa. 50, 51; *Edwards v. Enterprise Mfg. Co.,* 283 Pa. 420, 421; *McGrath's Estate,* supra, 315; *Murdock's Estate,* 92 Pa. Superior Ct. 275, 277; *Holben's Estate,* 93 Pa. Superior Ct. 472, 482.

Disregarding the effect of appellant's failure to testify as to the terms of the alleged contract, and entirely apart from her own admissions, the rejection of her claim is fully warranted on another ground. As said in *Commonwealth v. Stump,* 53 Pa. 132, 136: "Reputation and cohabitation at best are only presumptive proofs, and where either of these grounds fail, the court should not allow the presumption of marriage to be built upon the other." See also *Vincent's Appeal,* 60 Pa. 228, 243; *Craig's Estate,* supra, 533. Here there is ample evidence of cohabitation over a period of seven years, but the evidence as to reputation, consisting solely of the testimony of two witnesses, one a boarder of appellant's and the other a close friend of appellant's for many years, is wholly inadequate. "The mere fact that they [the alleged contracting parties] were known to a few people as man and wife is not sufficient evidence to establish marriage. Proof of reputation for such purpose must be general and not confined to a few persons in the immediate neighborhood, as the relationship may be established merely for the purpose of deceiving others": *Hilton's Estate,* 263 Pa. 16, 19. See also *Yardley's Estate,* 75 Pa. 207, 212; *Appeal of Read-*

*ing Fire Ins. & Trust Co.,* supra, 207. This testimony was, moreover, sharply contradicted by an intimate associate of decedent's, who testified that decedent was merely a boarder in the house of appellant, paying her for his board the sum of $10 a week; and that contradiction alone is sufficient to sustain the finding of the court below on appeal: *Stevenson's Estate,* 272 Pa. 291, 300.

In view of the finding that no marriage was ever contracted between decedent and appellant, not because decedent was legally incapacitated, but because there was in fact no mutual agreement to become husband and wife, decedent's marital status at the time of the alleged marriage becomes immaterial. The law, of necessity, imposes a heavy burden on one who grounds his claim on an allegation of common-law marriage. As said by President Judge KELLER in *Baker v. Mitchell,* 143 Pa. Superior Ct. 50, 54: "The law of Pennsylvania recognizes common-law marriages. But they are a fruitful source of perjury and fraud, and, in consequence, they are to be tolerated, not encouraged; the professed contract should be examined with great scrutiny, and it should plainly appear that there was an actual agreement entered into, then and there, to form the legal relation of husband and wife." Especially is this true where one of the parties is dead and the claim so grounded is to share in the distribution of his estate. "When the lips of a man are sealed by death, and he leaves no satisfactory evidence as to the existence of such contract, courts will be very slow to establish it in derogation of the undoubted rights of those who follow him": *Stevenson's Estate,* supra, 301. See also *Craig's Estate,* supra, 538; *Osterlings Estate,* 323 Pa. 23, 27; *McGrath's Estate,* supra, 318. Considering the evidence adduced by appellant in the light of these cautions, the learned auditing judge found it "so unsatisfactory that we are satisfied that no contract of marriage was entered into between the parties." Our review

of the record convinces us that no other decision could properly have been reached under the evidence and that the decree of the court below must be affirmed.

Decree affirmed and appeal dismissed at appellant's cost.