480 A.2d 327

**In re ESTATE of Spurgeon D. REES**

**Appeal of Dorothea L. REES.**

Superior Court of Pennsylvania.

Argued April 4, 1984.

Filed Aug. 17, 1984.

Kiefer N. Gerstley, Philadelphia, for appellant.

David A. Wion, Harrisburg, for appellee.

Before WICKERSHAM, OLSZEWSKI and HOFFMAN, JJ.

HOFFMAN, Judge:

Appellant challenges the lower court's order striking her election to take against decedent's will. Specifically, she argues that the lower court erred in concluding that appellant and decedent were not united in common law marriage. We find no merit in appellant's challenge and, accordingly, affirm.

Following decedent's death on September 24, 1978, appellant filed an election to take against decedent's will, to which appellees, the executors of decedent's estate, objected. After depositions of out-of-state witnesses were taken, and a hearing was held to determine appellant's status vis-a-vis the decedent, the lower court ordered the election stricken. This appeal followed.

Appellant contends that words *in praesenti* are not necessarily required for the establishment of common law marriage and that the evidence was sufficient to establish such a marriage. Essentially, appellant's argument is

that evidence of her and decedent's cohabitation and reputation in the community sufficed to prove a common law marriage. Upon review, we disagree. Words *in praesenti* are usually required to establish a common law marriage relationship. *See McGrath's Estate*, 319 Pa. 309, 179 A. 599 (1935). However,

> because it is often difficult to prove a common law marriage by words *in praesenti*, the law has created or raised a rebuttable presumption of marriage where two absolutely essential elements are conjoined and co-exist— constant, as distinguished from an irregular or inconstant, cohabitation plus a reputation of marriage, which is not partial or divided but is broad and general.

*Manfredi Estate*, 399 Pa. 285, 291, 159 A.2d 697, 700 (1960). Cohabitation and reputation, however, "do not create the marriage but rather are circumstances giving rise to a rebuttable presumption of one." *Wagner Estate*, 398 Pa. 531, 533, 159 A.2d 495, 497 (1960); *Manfredi Estate, supra* 399 Pa. at 291, 159 A.2d at 700; *Nikitka's Estate*, 346 Pa. 63, 29 A.2d 521 (1943). Moreover, "the rule which permits a finding of marriage duly entered into based upon reputation and cohabitation alone is one of necessity to be applied only in cases where other proof is not available." *Nikitka's Estate, supra*, 346 Pa. at 65, 29 A.2d at 522.[1]

In the instant case, the record reveals the following facts and proof: Appellant and the decedent were not married when they parented a son, Morgan, in 1953. On May 13, 1954, they were married in El Paso, Texas and within a day were divorced in Mexico. Shortly thereafter, appellant moved with Morgan to Florida while decedent remained in Harrisburg, the location of his business. The two remained domiciled in their respective cities for the following 24

---

1. We note the Pennsylvania courts' reluctance to validate a common law marriage where words *in praesenti* are absent and proof of reputation and cohabitation is lacking, for "[w]hen the lips of a man are sealed by death, and he leaves no satisfactory evidence as to the existence of such contract, courts will be very slow to establish it in derogation of the undoubted rights of those who follow him." *Manfredi Estate*, 399 Pa. 285, 292, 159 A.2d 697, 701 (1960), *quoting Baker v. Mitchell*, 143 Pa.Superior Ct. 50, 54, 17 A.2d 738, 740 (1941).

years. However, appellant contends that throughout the 24-year period preceding decedent's death, the two enjoyed a reputation in her Florida community as a married couple and that decedent's occasional visits to Florida clearly demonstrated the requisite cohabitation. In support of her claim, appellant presented the deposition testimony of several Florida neighbors and friends of her son. Generally, the witnesses were all questioned about their knowledge of the frequency of the decedent's visits to Florida and their impression of the nature of the relationship at issue.

■ With regard to the couple's alleged cohabitation, Raul Valdovinos, a childhood friend of Morgan's, testified that he met the decedent in the early 1970's and that he saw him at appellant's house on major holidays. Mr. Valdovinos also testified that the decedent was introduced to him as Morgan's father. (N.T. December 18, 1980 at 93). Earl Valentovic, another of Morgan's friends, testified that he too saw the decedent on holidays and "probably three, four, maybe several various times in the middle of the year too...", and that the decedent always remained in Florida for three days or more. (N.T. December 18, 1980 at 12). On cross-examination however, Mr. Valentovic conceded that the decedent "was not [in Florida] for most months out of the year." (N.T. December 18, 1980 at 25). Based on this evidence, representative of all of the deponents' testimony, appellant has clearly failed to meet her burden to prove that she and the decedent enjoyed "constant, as distinguished from an irregular or inconstant, cohabitation." *Manfredi Estate, supra* 399 Pa. at 291, 159 A.2d at 700. *Cf. Nikitka's Estate, supra* (ample evidence of seven years cohabitation at parents' house); *Wagner Estate, supra* (resumption of 20-year marriage after one year's interruption).

■ Further, the evidence fails to support appellant's contention that she and the decedent were commonly known and recognized as husband and wife.

The mere fact that they [the alleged contracting parties] were known to a few people as man and wife is not

sufficient evidence to establish marriage. Proof by repu-
tation for such purposes must be general and not con-
fined to a few persons in the immediate neighborhood, as
the relationship may be established merely for the pur-
pose of deceiving others.

*Nikitka's Estate, supra,* 346 Pa. at 66, 29 A.2d at 523,
*quoting Hilton's Estate,* 263 Pa. 16, 19, 106 A. 69, 70
(1919). *See Wagner Estate, supra* (resumption of a 20-year
marriage). *Cf. Dennis Estate,* 394 Pa. 296, 147 A.2d 419
(1959) (no proof of reputation—"wife" always referred to
by former husband's name); *Nikitka's Estate, supra* (testi-
mony of reputation by two witnesses, "one a boarder of the
appellant's and the other a close friend of appellant's for
many years" inadequate proof). In the instant case, appel-
lant presented the testimony of only a few neighbors and
friends of her son. Several of the deponents stated that
they understood appellant and decedent were married, that
the couple traveled together, and that appellant never dated
other men. Mr. Valdovinos testified that he had even seen
the decedent emerge from appellant's bedroom in the morn-
ing hours. (N.T. December 18, 1980 at 94). Additionally,
the witnesses testified, over the objection of appellees'
counsel, that the feeling in the community was that the
couple was indeed married. This evidence, however, falls
far short of that required to demonstrate reputation. First-
ly, it is undisputed that the decedent long resided in Harris-
burg, Pennsylvania. No evidence was introduced by appel-
lant that, in Harrisburg the couple enjoyed the reputation of
being married.[2] Nor is there any evidence that appellant
ever visited Harrisburg to see her alleged "common law
husband". From these gaps in appellant's proof, and from
our review of the record, we infer that in decedent's com-
munity he was regarded as a single man. Secondly, the

2. We disagree with appellant's claim that the lower court erroneously
permitted the admission into evidence of the decedent's tax returns,
which he had filed as a single individual. The lower court, acting in
its discretion, accepted the forms in place of the originals because
they were on file with the IRS and the copies were found among the
decedent's personal papers.

only evidence offered by appellant was the testimony of a few neighbors and friends. This testimony does not stretch beyond appellant's neighborhood to establish a general reputation. For instance, Mr. Valdovinos' testimony that he had seen the decedent at appellant's home during the morning hours and evidence that the couple traveled together on several occasions, do not establish a "reputation of marriage, which is not partial or divided, but is broad and general." *Manfredi Estate, supra* 399 Pa. at 291, 159 A.2d at 700. This evidence suggests that appellant and decedent maintained a close, even intimate relationship over more than two decades, but fails to satisfy the proof required to establish a valid common law marriage.[3]

Accordingly, we affirm the lower court's order striking appellant's election against decedent's will.

Affirmed.

---

**3.** Appellant submits boat boarding passes as evidence of reputation, claiming that because both she and the decedent checked off "married" and listed her address as their home on the passes, that they clearly held themselves out as married. The passes, while indicating the close nature of the couple's relationship, do not alone, or even coupled with the remaining evidence, support a finding of general reputation in the community.