602 A.2d 387

**Giant EAGLE, Petitioner,**

**v.**

**WORKMEN'S COMPENSATION APPEAL BOARD (BAHORICH), Respondent.**

Commonwealth Court of Pennsylvania.

Argued Oct. 10, 1991.

Decided Jan. 7, 1992.

Reargument Denied March 17, 1992.

Sylvester A. Beozzo, for petitioner.

Louis A. Raimond, for respondent.

Before PELLEGRINI and BYER, JJ., and NARICK, Senior Judge.

BYER, Judge.

This is an appeal from an order of the Workmen's Compensation Appeal Board affirming a referee's decision which granted the fatal claim petition of Joseph Bahorich. Claimant's petition arose out of the work-related death of Ann Bahorich, claimant's alleged common law wife, on December 28, 1984. We reverse.[1]

■ The sole question before us is whether claimant was the common law husband of decedent. The existence of a common law marriage is a mixed question of law and fact. *Duggan v. Workmen's Compensation Appeal Board (Litchfield Township)*, 131 Pa.Commonwealth Ct. 184, 569 A.2d 1022, 1023 (1990). Words *in praesenti* sufficient to establish a definite agreement to marry usually are required to establish a common law marriage. *Estate of Rees*, 331 Pa.Superior Ct. 225, 480 A.2d 327 (1984). "Although the precise words used are not alone controlling, proof of the actual intention of the parties to form a marriage contract is indispensable to the existence of a common law marriage." *Bowden v. Workmen's Compensation Appeal Board*, 31 Pa.Commonwealth Ct. 476, 478, 376 A.2d 1033, 1034 (1977).

■ Because the circumstances often are such that evidence of words *in praesenti* to establish a common law marriage is unavailable, a rule of law has developed which allows evidence of reputation of marriage and cohabitation

1. In workmen's compensation cases where the party bearing the burden of proof prevailed before the referee and the board took no additional evidence, our scope of review is limited to determining whether constitutional rights were violated, an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. 2 Pa.C.S. § 704.

to create a rebuttable presumption of common law marriage. *Stuck Leasing Co. v. Workmen's Compensation Appeal Board (Ziegler),* 125 Pa.Commonwealth Ct. 237, 557 A.2d 808 (1989), *appeal denied,* 523 Pa. 652, 567 A.2d 655 (1989). However, resort to the presumption based upon proof of cohabitation and reputation is proper only where direct evidence of the alleged marriage agreement is unavailable. As the Superior Court observed in *Estate of Rees:*

> Cohabitation and reputation, however, 'do not create the marriage but rather are circumstances giving rise to a rebuttable presumption of one.' *Wagner Estate,* 398 Pa. 531, 533, 159 A.2d 495, 497 (1960); *Manfredi Estate, supra* 399 Pa. [285] 291, 159 A.2d [697] 700 [ (1960) ]; *Nikitka's Estate,* 346 Pa. 63, 29 A.2d 521 (1943). Moreover, 'the rule which permits a finding of marriage duly entered into based upon reputation and cohabitation alone is one of necessity to be applied only in cases where other proof is not available.' *Nikitka's Estate, supra,* 346 Pa. at 65, 29 A.2d at 522.

331 Pa.Superior Ct. at 228, 480 A.2d at 328. (footnote omitted).

■ At the hearing, claimant testified that on or about November 3, 1979, he and his wife met at a restaurant. He stated:

> Oh yeah, I said this is where we're going to start from where we left off. We made a bond of some type and, you know, we're husband and wife again as of right now and we toasted coffee to it and we enjoyed the rest of the evening.

(41a). Notwithstanding this testimony by claimant,[2] the referee did not find that claimant and his wife exchanged words *in praesenti* sufficient to demonstrate a mutual intention to marry. The referee made the following findings of fact:

**2.** It might be of some significance that claimant's version of the facts and credibility were challenged by employer.

6. Claimant and decedent were originally married through a Civil ceremony on October 11, 1952, and remained married for 25 years. Six children were born of the marriage.

7. On July 1, 1977, the marriage was legally dissolved by a divorce decree.

8. The claimant, the claimant's and decedent's daughter, Joann Popek, and the claimant's best friend and co-worker, Debbie Weiloch, were all found to be credible when they testified that the decedent divorced the claimant in 1977 as the result of an ultimatum or scare tactic given to motivate the claimant to deal with his problem of alcoholism.

\*     \*     \*     \*     \*     \*

11. On November 3, 1979, claimant and decedent met at a restaurant in Bloomfield and agreed to reconciliate. As of that time, claimant lived with the decedent, continually, shared the same bedroom, and engaged in sexual relations, for a five year period of time, until December 28, 1984, the date of the decedent's death.

With evidence available to find an exchange of words *in praesenti* or a present intention of the parties to establish a common law marriage, the referee merely found that the parties agreed to reconciliate. The referee's finding of an agreement to reconciliate is not sufficient to meet the burden of proof established in *Bowden*. After failing to find an exchange of words *in praesenti* sufficient to demonstrate that both claimant and decedent then had a present intention to marry, the referee evaluated claimant's evidence of cohabitation and reputation of marriage. Based on that evidence, the referee concluded that claimant and his wife remarried under common law.

As a matter of law, the rule which permits a referee to find a common law marriage based on cohabitation and reputation of marriage is one of necessity to be applied only in cases where other proof is not available. *Estate of Rees.* Here, there was no basis to resort to the presumption, because claimant was available to testify to the words he

allegedly exchanged with decedent. Because proof was available to find an exchange of words *in praesenti*, and the referee did not make a specific finding of an exchange of words *in praesenti* or a present intention to be married, the referee could not, as a matter of law, find a common law marriage. Therefore, the referee and board erred in evaluating evidence of cohabitation and reputation of marriage, and finding a common law marriage based on that evidence.

■ Even if it were appropriate to consider evidence of cohabitation and reputation of marriage, the referee and board erred as a matter of law in holding that the claimant's evidence of cohabitation and reputation of marriage was sufficient to create a presumption of a common law marriage.

At the hearing before the referee, claimant presented the testimony of his and the decedent's children, and the decedent's friend. Each witness testified that claimant and decedent lived together and had a general reputation of marriage. However, in *Estate of Rees*, the Superior Court stated:

> The mere fact that they [claimant and decedent] were known to a few people as man and wife is not sufficient evidence to establish marriage. Proof by reputation for such purposes must be general and not confined to a few persons in the immediate neighborhood, as the relationship may be established merely for the purpose of deceiving others.

*Id.*, 331 Pa.Superior Ct. at 229–230, 480 A.2d at 329.

Here, it seems that claimant and decedent's reputation of marriage was confined to very few people. Therefore, it is not sufficient to give rise to the presumption of marriage. The insufficiency of the evidence to meet claimant's burden of proof becomes even more apparent upon review of the uncontested evidence from disinterested third parties in this record.

James Fitzpatrick, a Department of Public Welfare employee, testified that from 1978 to 1988, claimant received medical and cash assistance as well as food stamps. Mr. Fitzpatrick also testified that claimant's application for assistance listed his marital status as divorced. As recently as his February 13, 1984 application, filed only 10 months prior to decedent's death, claimant asserted his marital status as divorced. Mr. Fitzpatrick also referred to a letter signed by the *decedent* and dated August 6, 1980, which stated that claimant was independent but residing at her house for health purposes. In addition, decedent wrote that she charged claimant rent. Significantly, the referee credited this testimony and found as a fact that the claimant represented his marital status to DPW as divorced.

Tonal L. Marsonek, an accountant who prepared decedent's income tax return, testified that decedent filed her 1984 tax form as unmarried and head of household. Mr. Marsonek also testified that decedent would have gained a tax advantage if she and claimant had filed a joint return as married. The referee found as fact that decedent did not list herself as married in her tax return. However, the referee discounted this evidence, stating:

> This Referee is not persuaded by this evidence and finds that whether or not decedent understood the legal effect of common law marriage for the purpose of filing income tax returns has not and cannot be established, and is, moreover, not a controlling factor in this case.

Finding of Fact No. 20.

Although decedent's listing of her marital status in an income tax return is not controlling, it is, in combination with employer's other evidence, "other proof", *Estate of Rees*, which either precluded resort to a presumption of marriage or was sufficient, in combination with the other evidence, to rebut it. The "other evidence" here is in marked contrast to the evidence in cases like *Stuck Leasing*, where the presumption was used to find a common law marriage, but there were no inconsistent representations to

government agencies by the common law spouses concerning their marital status.

To summarize, we hold: (1) Because direct evidence of what allegedly transpired between the parties was available, it was error to resort to a rebuttable presumption of marriage based upon proof of reputation and cohabitation; (2) Under the facts found by the referee, claimant did not prove the exchange of words *in praesenti* sufficient to support the conclusion of a common law marriage; and (3) Even if it were appropriate to attempt to use the presumption, the evidence is insufficient to establish the requisite general reputation of marriage and, in any event, the uncontested evidence of disinterested third parties concerning claimant's and decedent's contemporaneous representation to government agencies of their unmarried status was sufficient to rebut the presumption. In short, although the referee's findings of fact are supported by substantial evidence, the findings and the evidence are insufficient as a matter of law to support the conclusion of a common law marriage in this case.

We reverse.

ORDER

We reverse the order of the Workmen's Compensation Appeal Board.

This decision was reached and opinion adopted before the conclusion of Judge Byer's service.