# In re Estate of McNeil

C.P. of Monroe County, no. 7415 Civil 2001.

*Lorrie E. Whitfield,* for petitioner.
*Timothy B. Fisher,* for respondent.

WALLACH MILLER, *J.,* November 30, 2001—This matter comes before the court as a result of a petition for declaratory relief filed in accordance with 23 Pa.C.S. §1103, to determine the marital status of the decedent and Sonia Rodriguez. The petitioner, Sonia Rodriguez, alleges the existence of common-law marriage. The decedent's daughter, Kim Sherry McNeil, is contesting the petition. A hearing was held before this court on November 2, 2001 at which time Ms. Rodriguez testified and presented four other witnesses. Kim Sherry McNeil testified and the decedent's brother Joseph McNeil also offered testimony to refute Ms. Rodriguez' petition. Following the filing of briefs by both parties and independent research by the court, we are ready to dispose of this matter.

From 1980 to 1987, Walter Arthur McNeil, the decedent, was married to Charlene McNeil, and they lived in New York City. A daughter, Kim Sherry McNeil, was born from this marriage. In 1985, the decedent began a relationship with Sonia Rodriguez, our petitioner. The decedent and petitioner lived together in New York City though decedent was still married to Charlene McNeil. On August 10, 1986, a son, Walter Arthur McNeil Jr., was born to Ms. Rodriguez and Mr. McNeil. In August of 1988, the decedent and his wife divorced. In 1996, the petitioner, the decedent and their son moved to Pennsylvania. Although decedent was free to legally solemnize his relationship with petitioner following his divorce, the couple never formally married. On September 11,

2001, Walter Arthur McNeil died intestate after terrorists attacked the World Trade Center in New York City. In order for Ms. Rodriguez to obtain a death certificate for Mr. McNeil in the State of New York, it is necessary that she be legally declared his wife or next of kin.

Petitioner, Sonia Rodriguez, claims that she is the common-law wife of the decedent. Specifically, Ms. Rodriguez maintains that she and the decedent: (1) cohabited and agreed to live as husband and wife in 1985 in New York City; (2) had a child together; (3) moved to Pennsylvania and continued to express their relationship as husband and wife; (4) purchased property together on May 1, 2001; and (5) were recognized as husband and wife among their neighbors and co-workers. Thus, Ms. Rodriguez requests this court to declare her the common-law wife of the decedent so that she may obtain a death certificate for him and collect benefits on her own behalf and also on behalf of their minor son.

Respondent, Kim McNeil, who is the daughter of the decedent and Charlene McNeil Benton, contends that the petitioner is not the common-law wife of her father. The respondent first argues that the decedent and the petitioner never agreed to establish a relationship as husband and wife after the decedent's divorce from her mother. Next, the respondent claims that the decedent never held himself out as the petitioner's husband. Last, the respondent asserts that the decedent and the petitioner did not intend to live as husband and wife. In fact, respondent argues that in 1996 the decedent moved to Pennsylvania only with his son so that the child could have a better life. The respondent acknowledges that the petitioner resided at the decedent's home in East Strouds-

burg, Pennsylvania for a period of about three years. However, the respondent argues that the decedent asked petitioner to leave his home in 1999 and from that time until the decedent's death the petitioner lived with her daughter, Taisha Hendricks, at an apartment in East Stroudsburg. Therefore, respondent requests this court to dismiss Sonia Rodriguez' petition. Respondent has applied to the State of New York requesting a death certificate for her father, and the application lists herself and her half-brother, Walter Arthur McNeil Jr., as equal beneficiaries.

Under the laws of Pennsylvania, a marriage is a civil contract by which a man and a woman agree to take each other as husband and wife. *Staudenmayer v. Staudenmayer*, 552 Pa. 253, 261, 714 A.2d 1016, 1019 (1998). Pennsylvania recognizes two kinds of marriage: one, ceremonial and the other, common-law. A ceremonial marriage is a wedding or marriage performed by a religious or civil authority with the customary ceremony or formalities. *Id.* A common-law marriage is a marriage by the express agreement of the parties without ceremony, and generally without a witness, by words not in futuro (in the future tense) or in postea (in the past tense) but in praesenti (in the present tense), uttered with a view and for the purpose of establishing the relationship of husband and wife. *Id.* at 262, 714 A.2d at 1020. A common-law marriage can only be created by an exchange of words in the present tense spoken with the specific purpose that the legal relationship of husband and wife be created. *Id.* No specific form of words is required. *Id.* All that is essential is proof of an agreement to enter into the legal relationship of marriage at the present time. *Id.*

Common-law marriages are a fruitful source of perjury and fraud. *Wagner Estate,* 398 Pa. 531, 533, 159 A.2d 495, 497 (1960). Consequently, they are to be tolerated, but not encouraged. *Id.* A purported contract of common-law marriage is examined with great scrutiny, and, in order to overcome such scrutiny must plainly establish that there was an actual agreement entered into to form the legal relation of husband and wife. *Nikitka's Estate,* 346 Pa. 63, 65, 29 A.2d 521, 523 (1943). This is especially true where one of the parties to the professed contract is dead. *Id.*

A purported spouse may prove the existence of a common-law marriage by eyewitness testimony, including the testimony of either of the parties to the contract, if competent and admissions by a party, either by words or acts which would raise an implication of marriage. *McGrath's Estate,* 319 Pa. 309, 314, 179 A. 599, 602 (1935). Additional evidence which may be submitted for or against the existence of a common-law marriage includes: (1) the execution of deeds as husband and wife, *Thewlis's Estate,* 217 Pa. 207, 310, 66 A. 519, 520 (1907); (2) the establishment of joint bank accounts, *In re Cummings Estate,* 330 Pa. Super. 255, 262, 479 A.2d 537, 541 (1984); (3) the woman's use of the man's surname, *id.;* (4) the parties' filing status on tax returns, *In re Estate of Rees,* 331 Pa. Super. 225, 230 n.2. 480 A.2d 327, 329 n.2 (1984); (5) the wearing of wedding rings, *In re Estate of Garges,* 474 Pa. 237, 243, 378 A.2d 307, 310 (1977); (6) taking out of life insurance naming each other as spouse, *id.;* (7) registering at a hotel as husband and wife, *Wagner Estate,* 398 Pa. at 534, 159 A.2d at 496; and (8) introducing one another as husband and wife,

*McGrath's Estate,* 319 Pa at 317, 179 A.2d at 603. Essentially, the test is a practical one requiring as much corroborative documentation and evidence as possible.

Where there is no testimony regarding the exchange of words in the present tense, Pennsylvania law applies a rebuttable presumption in favor of a common-law marriage based on proof of constant cohabitation and a broad general reputation of marriage. *Manfredi Estate,* 399 Pa. 285, 291, 159 A.2d 697, 700 (1960). Constant cohabitation even when conjoined with general reputation are not marriage, they merely give rise to a rebuttable presumption of marriage. *Staudenmayer,* 552 Pa. at 263, 714 A.2d at 1021. This presumption in favor of common-law marriage is one of necessity and applies only in cases where other proof is not available and the parties are otherwise disabled from testifying regarding verba in praesenti. *Id.* The presumption of marriage from cohabitation and reputation may always be rebutted, and is unavailable where there is proof that no marriage in fact had taken place. *Nikitka's Estate,* 346 Pa. at 65, 29 A.2d at 522.

Where a party claiming a common-law marriage is available to testify regarding verba in praesenti, the burden rests with that party to produce clear and convincing evidence of the exchange of words in the present tense spoken for the purpose of establishing the relationship of husband and wife. *Staudenmayer,* 552 Pa. at 263, 714 A.2d at 1021. An alleged spouse who is able to testify and fails to prove, by clear and convincing evidence, the establishment of a marriage contract through the exchange of verba in praesenti, does not enjoy any presumption based on evidence of constant cohabitation and

reputation of marriage. *Id.* Hence, the rebuttable presumption in favor of a common-law marriage disappears in the face of proof that no marriage had in fact taken place. *Id.*

In the present case, Sonia Rodriguez testified that no ceremonial marriage was ever performed to solemnize her relationship with the decedent. She asserts, however, that there is evidence on record from which the fact of marriage might properly be inferred. Unfortunately, Ms. Rodriguez was unable to offer any testimony in support of her contention that she and the decedent had a common-law marriage. She offered no evidence as to an exchange of words between herself and the decedent indicating their intent to enter into the legal relationship of husband and wife. To the contrary, substantial evidence indicates that the parties were not in fact married. The petitioner does not use the decedent's surname. The petitioner and the decedent hold separate bank accounts and file separate, individual income tax returns. The petitioner's driver's license identifies her as Sonia Rodriguez. There is no evidence that the parties wore wedding rings. There were no deeds executed by the petitioner and the decedent as husband and wife. To the contrary, the 1996 deed to the decedent's Pennsylvania residence names the decedent as the sole grantee of the property and refers to him as a "single individual." Also, the deed to a timeshare villa, which is dated May 1, 2000, was conveyed to "Walter A. McNeil and Sonia Rodriguez, single." Moreover, on cross-examination, the petitioner testified the reason for this designation is because she and the decedent were not married as of May 1, 2000, although they were planning to marry. (N.T. p. 20, ll.

17-24.) No additional evidence was offered following this admission regarding a present exchange of words between the petitioner and the decedent demonstrating their intent to enter the relationship of husband and wife after May 1, 2000 and before the decedent's death.

We further find that Ms. Rodriguez is not entitled to any rebuttable presumption in favor of a common-law marriage based upon evidence of constant cohabitation and reputation of marriage. Ms. Rodriguez was available to testify to the precise form of the alleged marriage contract between her and the decedent but failed to do so. Hence, it may be properly assumed that no contract was in fact entered into. As we have previously stated, where the purported spouse herself fails to offer evidence that a valid contract was actually entered into, evidence as to cohabitation and reputation is of no value. Cohabitation and reputation are not marriage. Instead, they are but circumstances from which marriage may be presumed, and such presumption is unavailable in the absence of proof that a marriage in fact had taken place.

Despite the effect of Ms. Rodriguez' failure to testify as to the terms of the alleged marriage contract, and entirely apart from her own admissions, we must reject her claim on another ground. Cohabitation and reputation are only presumptive proofs, and where either of these grounds fails, our courts have not allowed the presumption of marriage to be built upon the other. *Nikitka's Estate*, 346 Pa. at 66, 29 A.2d at 523. Here, there is evidence of cohabitation over a period of years, but the evidence as to reputation, consisting solely of the testimony of the petitioner's close friends and neighbors is wholly inadequate. The mere fact that Ms. Rodriguez

and the decedent were presumed to be man and wife to three friends and neighbors does not establish a contract of marriage. Proof of reputation must be general and not confined to a few persons, as the relationship may be established for the purpose of deceiving others. Moreover, the testimony of these witnesses was sharply contradicted by decedent's daughter and brother, who each testified that Ms. Rodriguez was never introduced as the decedent's wife and was known to his family only as the mother of his son. We find that this contradiction alone is legally sufficient to disallow the presumption of marriage.

Upon considering the evidence presented by the petitioner in light of the very heavy burden Pennsylvania law imposes on one claiming a common-law marriage, we are constrained to find that no common-law marriage was ever contracted between Sonia Rodriguez and the decedent, Walter Arthur McNeil.

This case requires further comment. Pennsylvania is one of the few states that still recognizes common-law marriage. New York abolished it in 1933. Over our 10 years on the bench, we have presided over nearly a dozen cases where common-law marriage was an issue. The misinformation among the general public and even among some members of the legal community about the requirements for proving a common-law marriage is rampant. The harm that is inflicted, mostly upon uninformed women, is serious. We would urge the legislature in Pennsylvania to follow the lead of other states and abolish this concept to protect all of its citizens.

86

## ORDER

And now, November 30, 2001, petitioner, Sonia Rodriguez', petition for declaratory relief is dismissed.