*Thomas Zadnik v. Richard F. Ambinder, M.D., et al.*, No. 803, September Term, 2022. Opinion by Beachley, J.

**WRONGFUL DEATH – STANDING – SPOUSE OF DECEASED – FOREIGN MARRIAGE**

**STANDARD OF REVIEW – MOTION TO DISMISS – LACK OF STANDING – REVIEWED AS SUMMARY JUDGMENT**

**TESTIMONY – DEAD MAN'S STATUTE – WRONGFUL DEATH**

Facts:  Appellant filed a wrongful death claim against appellees alleging medical negligence in the treatment of deceased, Margaret Conway.  Appellant alleged that he was Ms. Conway's common law husband under Pennsylvania law.  Appellee Dr. Ambinder filed a motion to dismiss and/or for summary judgment, alleging that appellant did not have standing because he and Ms. Conway were never married.  Appellant argued that he and Ms. Conway exchanged vows in Pennsylvania in 1998 creating a common law marriage in Pennsylvania, and provided an affidavit specifically describing the private ceremony.

The circuit court dismissed the case for lack of standing, ruling that appellant's testimony was not sufficient to prove a common law marriage without evidence that he and Ms. Conway had a reputation in the community of being married.

Held:  Judgment reversed.

The Court described the two modalities for proving a common law marriage in Pennsylvania.  First, when direct evidence of words exchanged with the present intent of forming a marriage ("*verba in praesenti*") is available, the party alleging marriage must rely on that evidence to prove the existence of a marriage.  Second, in situations where evidence of *verba in praesenti* is unavailable, a party may establish a rebuttable presumption of marriage through evidence of cohabitation and a general reputation in the community of being married.

After establishing that appellant's testimony would not be barred by the Dead Man's Statute, the Court held that Pennsylvania law allows for a party to prove the existence of a marriage solely through that party's own testimony.  Because evidence of *verba in praesenti* is available through appellant's testimony, evidence of cohabitation and reputation is irrelevant except to bolster or diminish appellant's credibility.  The circuit court therefore erred in granting summary judgment.

REPORTED

IN THE APPELLATE COURT

OF MARYLAND**

No. 803

September Term, 2022

THOMAS ZADNIK

v.

RICHARD F. AMBINDER, M.D., ET AL.

Leahy,
Beachley,
Moylan, Charles E., Jr.
    (Senior Judge, Specially Assigned),

JJ.

Opinion by Beachley, J.

Pursuant to the Maryland Uniform Electronic Legal Materials
Act (§§ 10-1601 et seq. of the State Government Article) this
document is authentic.



Gregory Hilton, Clerk

Filed: May 23, 2023

*Nazarian, J., did not participate in the Court's decision to designate this opinion for publication pursuant to Maryland Rule 8-605.1.

**At the November 8, 2022 general election, the voters of Maryland ratified a constitutional amendment changing the name of the Court of Special Appeals of Maryland to the Appellate Court of Maryland. The name change took effect on December 14, 2022.

Appellant Thomas Zadnik filed a wrongful death action in the Circuit Court for Baltimore City against appellees Dr. Richard F. Ambinder and Johns Hopkins Medicine. In his complaint, Mr. Zadnik alleged that the decedent, Margaret Conway, was his wife under Pennsylvania common law. Dr. Ambinder filed a motion to dismiss and/or for summary judgment, alleging that Mr. Zadnik did not have standing to bring a wrongful death action because he and Ms. Conway were not legally married. The court dismissed the complaint for lack of standing, concluding that Mr. Zadnik did not present sufficient evidence to generate a genuine issue of material fact as to his purported common law marriage.[1] Mr. Zadnik appeals, and presents two questions for our review,[2] which we have consolidated and rephrased as:

Did the circuit court err in dismissing the case for lack of standing?

For the reasons that follow, we reverse the judgment of the circuit court.

---

[1] Johns Hopkins Medicine was never served and did not participate in the proceedings in the circuit court, but the claim against it was dismissed for lack of standing, not based on failure of service.

[2] Mr. Zadnik raised the following questions for our review:

1. Did the trial court err when it granted Dr. Ambinder's motion to dismiss based upon Tom's lack of standing[?]

2. Did the trial court err when it ruled there was no genuine issue of material fact that Tom is the common law husband of Peggy[?]

Ms. Conway died on April 12, 2017, due to colon cancer. In February 2021, Mr. Zadnik filed a wrongful death complaint against Dr. Ambinder and Johns Hopkins Medicine, Dr. Ambinder's employer. The complaint alleged that Dr. Ambinder, who treated Ms. Conway from October 2010 to April 2013, committed medical negligence in his treatment of Ms. Conway. Integral to this appeal, Mr. Zadnik also alleged that he and Ms. Conway were married.

Dr. Ambinder filed a motion to dismiss and/or for summary judgment based on lack of standing. A Maryland wrongful death action may generally only be brought by a spouse, child, or parent of the decedent. Md. Code (1974, Repl. Vol. 2020), § 3-904(a)(1) of the Courts and Judicial Proceedings Article ("CJP"). Dr. Ambinder argued that because Mr. Zadnik was not married to Ms. Conway, he lacked standing to bring a wrongful death action.

Nearly two hundred pages of documents were attached to Dr. Ambinder's motion, including medical documents, newspaper articles, affidavits, and deposition transcripts. Mr. Zadnik's Response to Requests for Admissions and Answers to Interrogatories were also attached to the motion. In both of these discovery responses, Mr. Zadnik asserts that he and Ms. Conway exchanged vows privately in their home in Pennsylvania, and became

---

[3] Because this appeal is from a dismissal that we shall review as a grant of summary judgment, as discussed below, we recite the facts in a light most favorable to Mr. Zadnik as the non-moving party.

common law spouses under Pennsylvania law.  In his Answers to Interrogatories, Mr.

Zadnik provided a detailed description of the private ceremony:

> On July 3, 1998, . . . Ms. Conway said to Mr. Zadnik, let's get married.  Mr. Zadnik responded that they could not get married because they were both divorced Catholics.  She told Mr. Zadnik that Pennsylvania has common law marriage.  He told her that he wanted to be married.  She told him to repeat after me, and she said:
>
> I, Margaret Ann Conway, take thee, Thomas John Zadnik, as my husband.
>
> Mr. Zadnik then said:
>
> I, Thomas John Zadnik, take thee, Margaret Ann Conway, as my wife.
>
> Then Margaret said, "We are married."

However, Mr. Zadnik admitted in his Response to Requests for Admissions and at

deposition that he and Ms. Conway did not tell most of their friends, family, and neighbors

about the marriage, nor did they identify themselves as married in any tax documents.

Dr. Ambinder also attached to his motion numerous medical reports that identified

Ms. Conway's marital status as "divorced," and her death certificate, which likewise

characterized her marital status as "divorced."  However, several summaries of Ms.

Conway's appointments dictated by her doctors include references to Mr. Zadnik as her

"husband" (*e.g.*, "She comes in accompanied by her husband.").  Affidavits from three of

Ms. Conway's sisters indicate that they were unaware of the purported marriage, and a

sister who served as the executrix of Ms. Conway's estate confirmed that Mr. Zadnik never

made a claim against the estate.  Ms. Conway's obituary described Mr. Zadnik as her "life

partner."  Two newspaper articles were attached to the motion, one from 2010, which

described Ms. Conway as Mr. Zadnik's "wife," and the other from 2012, which described Ms. Conway as his "partner." The deed to the house Mr. Zadnik and Ms. Conway owned together was titled as a joint tenancy with right of survivorship.

Attached to Mr. Zadnik's response to Dr. Ambinder's motion was an affidavit from Mr. Zadnik, wherein he described the highlights of his relationship with Ms. Conway, including his recounting of the private marriage ceremony. Mr. Zadnik also attached to his response an additional summary of a doctor's appointment wherein the doctor refers to Mr. Zadnik as Ms. Conway's spouse.

After a hearing on May 2, 2022, the circuit court granted Dr. Ambinder's motion to dismiss, providing the following analysis from the bench:

> If Mr. Zadnik had to establish both recognition generally in the community as to the couple holding themselves out to the public as husband and wife, if he did, to the extent he does today, the evidence before the [c]ourt, in that regard, is I -- to be very clear and candid, is insufficient.

> Moreover, the purported wedding ceremony was one which was witnessed by no one and to which the other purported party is deceased and, obviously, had not previously to having become deceased, offered any documentary evidence in the form of any sworn statement attesting to her belief that (indiscernible[]) "ceremony" was her wedding ceremony to Mr. Zadnik.

> Moreover, Mr. Zadnik was, from the evidence, the only other person in the room when the purported common law wedding ceremony occurred. There was no officiant.

> Perhaps I said that too quickly. Let me repeat that. There was no officiant. There were no other witnesses; whether they be follow [sic] employees of either Mr. Zadnik or Ms. [Conway]; no neighbors; no friends; no siblings of Ms. [Conway]; no anyone.

> While it is clear to the [c]ourt that Mr. Zadnik has established that the parties lived together and cohabited, that is not tantamount to meeting the

4

heavy burden, by clear and convincing evidence, required to establish the existence of a common law marriage.

The court then noted that the house Mr. Zadnik and Ms. Conway owned together was titled as joint tenants and not as tenants by the entirety. The court continued:

> Mr. Zadnik argues that there is evidence of [an exchange of words indicating a present intent to be married,] but there is evidence of the intent by only one of the parties to the marriage and the question is whether . . . the testimony of one party alone is insufficient to confirm the existence of a valid and lawful marriage.
>
> [Mr. Zadnik] argues, and quite correctly, with regard to other cases, unrelated to this case, that it could be determined based upon an even higher burden of proof based upon one eyewitness and [Mr. Zadnik] argues, as an example, a criminal case where the State's burden of proof is to prove that the named defendant committed each and every different single legal element of the offense or offenses charged beyond a reasonable doubt to a moral certainty and [Mr. Zadnik] argues that (indiscernible[)] have resulted based upon lone eyewitness testimony in that regard.
>
> And that is so and that is undisputed.
>
> The issue here is, however, whether understanding that as the evidence itself suggests that Mr. Zadnik and Ms. [Conway] cohabited for a period of years in Pennsylvania, whether, in doing so, they held themselves out to the public, generally, as husband and wife.
>
> And, on the record, as it presently exists, there definitely is insufficient evidence to establish that . . . Mr. Zadnik and Ms. [Conway] held themselves out to the public as husband and wife.
>
> In the view of the [c]ourt, there is no genuine, based on the evidence before the [c]ourt now, there is no genuine dispute of a material fact with regard to the existence of a common law marriage that were (indiscernible[)] existed [which would] give Mr. Zadnik standing to sue here.

After some discussion about whether the dismissal should be with or without prejudice, the court concluded that it had "no alternative but under the law to dismiss the case with prejudice." The court explained that it was dismissing the case rather than

5

granting summary judgment because "standing is a threshold issue in every case," and "on the evidence before the [c]ourt that standing is not established." The written order, entered on May 4, 2022, dismissed the complaint as to both Dr. Ambinder and Johns Hopkins Medicine.

Mr. Zadnik filed a motion for reconsideration on May 16, 2022, which the court denied on June 13, 2022. Mr. Zadnik then noted this appeal.[4]

## DISCUSSION

### Mr. Zadnik's Testimony Was Sufficient Evidence of Common Law Marriage for Purposes of Summary Judgment

*A. Standard of Review*

Because the court dismissed the complaint after reviewing material outside of the pleadings, we must first determine the appropriate standard of review. Rule 2-322(c) provides:

> If, on a motion to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 2-501, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 2-501.

Here, the motion to dismiss was based on Mr. Zadnik's lack of standing to file a wrongful

---

[4] At oral argument, Dr. Ambinder withdrew his argument that this appeal is timely only as to the circuit court's denial of the motion for reconsideration.

6

death action. Both this Court and the Supreme Court of Maryland[5] have relied on the

language of Rule 2-322(c) to review dismissals for lack of standing as summary judgments

where the trial court relied on matters outside the pleadings. *See, e.g.*, *Floyd v. Mayor of

Baltimore*, 463 Md. 226, 241 (2019); *Anne Arundel County v. Bell*, 442 Md. 539, 552

(2015); *Patuxent Riverkeeper v. Md. Dept. of Env't*, 422 Md. 294, 308 n.12 (2011);

*McIntyre v. Smyth*, 159 Md. App. 19, 26–28 (2004). *But see Paula v. Mayor of Baltimore*,

253 Md. App. 566, 578–81 (2022) ("Because standing is a question of law that is collateral

to the merits, the court was entitled to consider the uncontested contents of the Appellants'

affidavits and opposition without converting the City's motion to one for summary

judgment."). In light of the court's consideration of voluminous documents outside the

pleadings—some of which support the formation of a common law marriage while others

suggest otherwise—we shall review the dismissal as the granting of a motion for summary

judgment.[6]

In an appeal from a grant of summary judgment, this Court reviews the circuit

court's decision *de novo*. *Zilichikhis v. Montgomery County*, 223 Md. App. 158, 176

(2015). A circuit court should grant summary judgment "if the motion and response show

---

[5] During the November 8, 2022 general election, the voters of Maryland ratified a constitutional amendment changing the name of the Court of Appeals to the Supreme Court of Maryland. The name change took effect on December 14, 2022.

[6] The result of this appeal would be the same if reviewed as a dismissal. "In reviewing the grant of a motion to dismiss, we must determine whether the complaint, on its face, discloses a legally sufficient cause of action." *Paula*, 253 Md. App. at 580 (quoting *Schisler v. State*, 177 Md. App. 731, 743 (2007)). Mr. Zadnik properly alleged in his complaint that he was Ms. Conway's spouse.

that there is no genuine dispute as to any material fact" and the moving party "is entitled to judgment as a matter of law." Rule 2-501(f). A review of the circuit court's decision to grant summary judgment thus begins by determining "whether a dispute of material fact exists in the record on appeal." *Macias v. Summit Mgmt., Inc.*, 243 Md. App. 294, 313 (2019). "[O]nly where such dispute is absent will we proceed to review determinations of law." *Id.* (alteration in original) (quoting *Remsburg v. Montgomery*, 376 Md. 568, 579 (2003)). All facts and reasonable inferences must be construed in the light most favorable to the non-moving party. *Id.*

### B. Analysis

As noted above, the underlying case is one for wrongful death, which, under CJP § 3-904(a)(1), "shall be for the benefit of the wife, husband, parent, and child of the deceased person."[7] Mr. Zadnik alleges in his complaint that he was Ms. Conway's husband. Through discovery, Dr. Ambinder learned that the purported marriage was based on Pennsylvania common law.

Although common law marriage has never been part of Maryland law, Maryland recognizes marriages that are "valid where contracted." *Blaw-Knox Constr. Equip. Co. v. Morris*, 88 Md. App. 655, 669–71 (1991) (holding in a Maryland wrongful death case that "there was sufficient evidence of a Pennsylvania common law marriage to create a jury

---

[7] CJP § 3-904(b) provides that, "[i]f there are no persons who qualify under subsection (a) of this section, an action shall be for the benefit of any person related to the deceased person by blood or marriage who was substantially dependent upon the deceased."

8

question"). "[T]he validity of the marriage is determined by the law of the place where it was contracted." *Id.* at 670 (citing *Dukes v. E. Tar Prods. Corp.*, 197 Md. 564, 568 (1951)). Resolution of this appeal requires us to examine the requirements for creating and proving the existence of a common law marriage in Pennsylvania.

Pennsylvania abolished common law marriage in 2005, but continues to recognize common law marriages that were created on or before January 1, 2005.[8] *Elk Mountain Ski Resort, Inc. v. Workers' Comp. Appeal Bd.*, 114 A.3d 27, 33 (Pa. Commw. Ct. 2015). In Pennsylvania, "[a] common law marriage can only be created by an exchange of words in the present tense, spoken with the specific purpose of creating the legal relationship of husband and wife[,]" commonly referred to as *verba in praesenti*. *PPL v. Workers' Comp. Appeal Bd.*, 5 A.3d 839, 842 (Pa. Commw. Ct. 2010) (citing *Staudenmayer v. Staudenmayer*, 714 A.2d 1016, 1020 (Pa. 1998)).

A party claiming a common law marriage must prove its existence by clear and convincing evidence. *Elk Mountain*, 114 A.3d at 33. "Words *in praesenti* sufficient to establish a definite agreement to marry usually are required to establish a common law marriage." *Giant Eagle v. Workers' Comp. Appeal Board*, 602 A.2d 387, 388 (Pa.

---

[8] More specifically, in 2003 the Commonwealth Court of Pennsylvania prospectively abolished common law marriage in *PNC Bank Corp. v. Workers' Comp. Appeal Bd.*, 831 A.2d 1269 (Pa. Commw. Ct. 2003). The Pennsylvania legislature "subsequently amended Section 1103 of the Marriage Law, 23 Pa.C.S. § 1103," to provide that "No common-law marriage contracted after January 1, 2005, shall be valid. Nothing in this part shall be deemed or taken to render any common-law marriage otherwise lawful and contracted on or before January 1, 2005, invalid." *Elk Mountain Ski Resort, Inc. v. Workers' Comp. Appeal Bd.*, 114 A.3d 27, 32–33 (Pa. Commw. Ct. 2015). This legislative amendment superseded the *PNC Bank* holding. *Id.* at 33.

Commw. Ct. 1992) (citing *Estate of Rees*, 480 A.2d 327 (Pa. Super. Ct. 1984)).  On the other hand, if evidence of *verba in praesenti* is not available, a party may present evidence of "constant cohabitation and a reputation of marriage which is not partial or divided but is broad and general" to create a rebuttable presumption that the marriage existed.  *Elk Mountain*, 114 A.3d at 33 (citing *Staudenmayer*, 714 A.2d at 1020–21).  Pennsylvania law is clear, however, that the "rebuttable presumption is 'one of necessity' to be applied only in cases of the party's 'inability to present direct testimony regarding the exchange of *verba in praesenti*.'"  *Id.* (quoting *Staudenmayer*, 714 A.2d at 1021).  "There is no basis to resort to the presumption if the [surviving spouse] is available to directly testify to the words allegedly exchanged with the decedent."  *Id.* (citing *Giant Eagle*, 602 A.2d at 389).

Mr. Zadnik argues that his testimony regarding *verba in praesenti* is sufficient by itself to generate an issue of material fact.  Dr. Ambinder responds that "Pennsylvania law is clear that an individual claiming to be the common law spouse of a decedent may not prove the existence of a marriage solely through his own self-serving testimony."  Dr. Ambinder further argues that Mr. Zadnik's testimony is not admissible under the Dead Man's Statute, but reiterates that even if Mr. Zadnik's testimony is admissible, his testimony alone is insufficient to "satisfy the high burden of establishing a common law

10

marriage."[9],[10]

In many cases where there is only one surviving putative spouse, that spouse is not able to testify regarding *verba in praesenti* because of the Dead Man's Statute. *See*, *e.g.*, *Elk Mountain*, 114 A.3d at 34–35; *In re Estate of Stauffer*, 476 A.2d 354, 357 (Pa. 1984). Maryland's Dead Man's Statute, CJP § 9-116, provides: [11]

---

[9] Dr. Ambinder also argues that Mr. Zadnik did not establish the rebuttable presumption of marriage because, although there is evidence of cohabitation, Mr. Zadnik has not presented evidence establishing that he and Ms. Conway had a "reputation of marriage that is not partial or divided." *See Elk Mountain*, 114 A.3d at 33. We fail to see the significance of this statement because Mr. Zadnik has not attempted to establish a common law marriage by reputation, presumably because the rebuttable presumption is not available to him under Pennsylvania law.

[10] At oral argument, Dr. Ambinder asserted that Mr. Zadnik's testimony was inadmissible hearsay. However, this issue was not presented in his brief beyond describing the testimony as "self-serving and uncorroborated hearsay testimony." No explanation is provided as to why Dr. Ambinder believes Mr. Zadnik's testimony constitutes inadmissible hearsay. Because the hearsay argument was not sufficiently briefed, we decline to consider it. *See* Rule 8-522(f) ("The Court may decline to hear oral argument on any matter not presented in the briefs."); *Ochoa v. Dept. of Pub. Safety & Correctional Servs.*, 430 Md. 315, 328 (2013) ("[A]rguments not presented in a brief or not presented with particularity will not be considered on appeal." (quoting *Klauenberg v. State*, 355 Md. 528, 552 (1999))). Although we do not decide this issue, we note that Mr. Zadnik's testimony regarding the purported exchange of vows is not likely hearsay. *See Garner v. State*, 414 Md. 372, 382–88 (2010) (hearsay rule does not exclude evidence of "verbal acts").

[11] The parties' arguments on this issue focus on Pennsylvania's Dead Man's Statute, 42 Pa. C.S.A. § 5930. However, because the admissibility of evidence is a procedural issue, we shall consider the admissibility of Mr. Zadnik's testimony regarding *verba in praesenti* under Maryland's Dead Man's Statute. *See Fox v. Fidelity First Home Mortg. Co.*, 223 Md. App. 492, 514–15 (2015) ("With respect to procedural matters, . . . '[t]he law of the forum governs.'" (second alteration in original) (quoting *Goodwich v. Sinai Hosp. of Balt., Inc.*, 343 Md. 185, 205 (1996))); *Mason v. Lynch*, 388 Md. 37, 39 n.1 (2005) ("[T]he sole issue raised in this Court concerns the admission into evidence of the photographs and defense counsel's argument based on the photographs. This is an issue governed by the law of the forum."). Regardless, the result would be the same under either

(continued)

11

A party to a proceeding by or against a personal representative, heir, devisee, distributee, or legatee as such, in which a judgment or decree may be rendered for or against them, or by or against an incompetent person, may not testify concerning any transaction with or statement made by the dead or incompetent person, personally or through an agent since dead, unless called to testify by the opposite party, or unless the testimony of the dead or incompetent person has been given already in evidence in the same proceeding concerning the same transaction or statement.

"The testimony meant to be excluded by the Statute is only testimony of a party to a cause which would tend to increase or diminish the estate of the decedent by establishing or defeating a cause of action by or against the estate." *Reddy v. Mody*, 39 Md. App. 675, 679 (1978). A wrongful death action "is not brought in a derivative or representative capacity to recover for a loss or injury suffered" by the decedent, but instead is for the benefit of the person bringing the action. *Eagan v. Calhoun*, 347 Md. 72, 82 (1997). Accordingly, it cannot "increase or diminish the estate of the decedent." *Reddy*, 39 Md. App. at 679. Because the Dead Man's Statute is not applicable in this wrongful death action, it does not preclude Mr. Zadnik's *verba in praesenti* testimony. *See Robinson v. Lewis*, 20 Md. App. 710, 711, 714 (1974) (holding that Dead Man's Statute did not preclude testimony by wife and son of decedent in wrongful death action concerning decedent's reports of pain in his legs after an automobile accident).

We turn to Dr. Ambinder's principal argument—that Mr. Zadnik "may not prove the existence of a marriage solely through his own self-serving testimony." Several

state's statute. *See Elk Mountain*, 114 A.3d at 35 (noting that application of Pennsylvania's Dead Man's Statute "requires that 'the interest of the proposed witness be adverse to the interest of the decedent's estate.'" (quoting *Punxsutawney Mun. Airport Auth. v. Lellock,* 745 A.2d 666, 670 (Pa. Super. 2000))).

Pennsylvania cases directly contradict this assertion. In *Elk Mountain*, the Commonwealth Court of Pennsylvania held:

> *Claimant's testimony accepted by the [Workers' Compensation Judge] as credible constitutes clear and convincing evidence* that she and Decedent exchanged *verba in praesenti* on June 12, 2004, and created their legal relationship of husband and wife. Her testimony met the definition of common-law marriage. She also presented the overwhelming evidence of constant cohabitation and a reputation of marriage, *although she was not required to do so* because she established the existence of a common-law marriage through the evidence of exchange of *verba in praesenti*.

114 A.3d at 36 (emphasis added). In *PNC Bank Corp. v. Workers' Comp. Appeal Bd.*, 831 A.2d 1269 (Pa. Commw. Ct. 2003), the surviving putative spouse supported his claim that he had a common law marriage with the decedent by relying on a December 1990 affidavit that he filed with his employer, signed by himself and the decedent, that stated: "on or about the 15th day of June, 1988, we, the undersigned, having the capacity to marry, did unite ourselves in marriage through the mutual exchange of words which expressed our present intent to live together as husband and wife[.]" 831 A.2d at 1273. PNC Bank challenged the sufficiency of the affidavit as proof of *verba in praesenti* "because it speaks to a past event rather than a present intent to marry." *Id.* at 1283. In holding that the affidavit was sufficient proof of the common law marriage, the Pennsylvania Commonwealth Court noted: "Indeed, if [the surviving spouse's] testimony had exactly mirrored the affidavit, there would be no doubt that it would have been sufficient to meet his burden of proof regarding the requisite *verba in praesenti*." *Id.* at 1284. The court further held that "since [the surviving spouse] testified to the exchange of *verba in*

13

*praesenti*, his case rose and fell on the sufficiency of that testimony."[12] *Id.* at 1285; *see also Kennedy v. Rossi*, 126 A.2d 531, 532 (Pa. Super. Ct. 1956) (noting that "it is unimportant that the finding of a common law marriage rests upon the testimony of [purported wife of decedent] alone"); *In re McGrath's Estate*, 179 A. 599, 602 (Pa. 1935) (holding, in case where appellant claimed to be the decedent's wife, that her testimony alone was sufficient to prove the existence of a common law marriage).

Because Mr. Zadnik can testify concerning the exchange of *verba in praesenti*, the presumption based on cohabitation and reputation is irrelevant. *See Elk Mountain*, 114 A.3d at 33 ("There is no basis to resort to the presumption if the [surviving spouse] is available to directly testify to the words allegedly exchanged with the decedent."). Contrary to the circuit court's analysis, Mr. Zadnik's testimony does not need to be accompanied by proof of cohabitation and reputation and may be sufficient on its own to prove the existence of a common law marriage, depending on whether the trier of fact deems his testimony credible.

On a motion for summary judgment, we must view all evidence and reasonable inferences in a light most favorable to the non-moving party. Here, Mr. Zadnik clearly stated in both his affidavit and his answers to interrogatories that Ms. Conway said to him, "let's get married," after which they recited the following vows in their home in Pennsylvania on July 3, 1998, beginning with Ms. Conway saying:

---

[12] The *PNC Bank* Court reiterated that because the *verba in praesenti* evidence was sufficient to establish a common law marriage, "evidence of cohabitation and reputation is completely irrelevant." 831 A.2d at 1285.

I, Margaret Ann Conway, take thee, Thomas John Zadnik, as my husband.

Mr. Zadnik then said:

I, Thomas John Zadnik, take thee, Margaret Ann Conway, as my wife.

Then [Ms. Conway] said, "We are married."

If a factfinder finds Mr. Zadnik's testimony credible, his description of this exchange of words, in and of itself, occurring in Pennsylvania prior to January 1, 2005, could prove by clear and convincing evidence that he and Ms. Conway created a common law marriage. *See Elk Mountain*, 114 A.3d at 36 ("Claimant's testimony accepted by the [Workers' Compensation Judge] as credible constitutes clear and convincing evidence that she and Decedent exchanged *verba in praesenti* on June 12, 2004, and created their legal relationship of husband and wife. Her testimony met the definition of common-law marriage.").[13]

## CONCLUSION

Mr. Zadnik's affidavit and answers to interrogatories describing his exchange of vows with Ms. Conway was sufficient for summary judgment purposes to establish a genuine dispute of material fact regarding whether he and Ms. Conway were married under

---

[13] We reiterate that evidence of cohabitation and general reputation is irrelevant where there is competent evidence of *verba in praesenti*. We note, however, that such evidence may be admissible to challenge the credibility of Mr. Zadnik's testimony. *Cf. Staudenmayer*, 714 A.2d at 1021 (where both putative spouses' testimonies contradict, spouse alleging marriage may support testimony with evidence of cohabitation and reputation); *McGrath*, 179 A. at 602 (evidence of cohabitation and reputation may be used to corroborate testimony). Nevertheless, neither a trial nor appellate court may make credibility determinations on a motion for summary judgment. *Sadler v. Loomis Co.*, 139 Md. App. 374, 390 (2001).

Pennsylvania common law. Accordingly, we reverse the grant of summary judgment and

remand for further proceedings.

> **JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY REVERSED. CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS. COSTS TO BE PAID BY APPELLEE, RICHARD F. AMBINDER, M.D.**