## UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

DOUGLAS JAMES CINCOTTA,
    Appellant,

  v.

OFFICE OF PERSONNEL
  MANAGEMENT,
    Agency.

DOCKET NUMBER
PH-0841-21-0025-I-1

DATE: November 20, 2024

## THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Catherine Tierney, Arnold, Maryland, for the appellant.

Tanisha Elliott Evans, Washington, D.C., for the agency.

**BEFORE**

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman
Henry J. Kerner, Member

**FINAL ORDER**

¶1  The appellant has filed a petition for review of the initial decision, which affirmed the reconsideration decision of the Office of Personnel Management (OPM) denying his application for Federal Employees' Retirement System

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

(FERS) survivor annuity benefits. For the reasons discussed below, we GRANT the appellant's petition for review, VACATE the initial decision, and REVERSE OPM's reconsideration decision. For the reasons set forth below, we FIND that the appellant is entitled to FERS survivor annuity benefits.

## BACKGROUND

¶2 The appellant and the decedent were married in a ceremony in the state of Maryland on August 26, 2019, soon after the decedent was diagnosed with a terminal illness. Initial Appeal File (IAF), Tab 6 at 27-28. Effective September 30, 2019, the decedent retired under FERS from his position with the General Services Administration. *Id.* at 29-42. In his retirement application, the decedent indicated that he was electing a reduced retirement annuity to provide the maximum survivor benefit to his spouse, the appellant. *Id.* at 29. On January 25, 2020, the decedent passed away from his terminal illness. *Id.* at 13, 26.

¶3 On March 12, 2020, the appellant filed an application for FERS survivor annuity benefits with OPM. IAF, Tab 6 at 21-25. On July 1, 2020, OPM denied the appellant's application, concluding that he was not entitled to an annuity because he and the decedent were not married for at least 9 months prior to the decedent's death. *Id.* at 15-16; *see* 5 U.S.C. §§ 8441(2)(A), 8442(a)(1), (e); 5 C.F.R. § 843.303(a)(1). The appellant requested reconsideration, noting that Federal law did not permit him and his husband to legally marry for the majority of their relationship and that they had cohabited and lived together as a married couple and considered each other life partners for the past 30 years. IAF, Tab 6 at 10-14. The appellant noted that when they completed their ceremonial marriage in 2019, it was only so that the appellant could make medical care decisions concerning his husband's terminal illness. *Id*. The appellant also provided OPM with documentary evidence of their lengthy relationship and joint financial decision-making over their 30 years together. *Id.* at 14. On

September 30, 2020, OPM issued a final decision denying the appellant's application on the same basis, concluding that the 4 month and 29-day[2] duration of the appellant's marriage to the decedent prior to his death fell short of the 9-month minimum required by Federal statute. *Id.* at 8-9.

¶4        The appellant timely filed the instant appeal challenging OPM's denial of his application for a survivor annuity and requested a hearing on his appeal. IAF, Tab 1. After holding the appellant's requested hearing, IAF, Tab 12, Hearing Compact Disc (HCD), the administrative judge issued an initial decision affirming OPM's reconsideration decision denying the appellant's application for survivor annuity benefits, IAF, Tab 14, Initial Decision (ID) at 1, 5. In the initial decision, the administrative judge acknowledged that the appellant had provided a plethora of evidence that he and the decedent had cohabitated and considered themselves married since approximately 1996 but concluded that these equitable considerations could not outweigh the statutory 9-month marriage requirement because the Federal government cannot be equitably estopped from denying benefits not otherwise provided by law. ID at 3-4 (citing *Office of Personnel Management v. Richmond*, 496 U.S. 414, 424 (1990)); *see* 5 U.S.C. §§ 8441(2)(A), 8442(a)(1), (e); 5 C.F.R. § 843.303(a)(1). The administrative judge also observed that the instant case was not one in which the appellant could not meet the statutory 9-month marriage requirement because he and the decedent could not be legally married for the requisite amount of time, noting that the appellant's home state, Maryland, had legalized same-sex marriage in 2013. ID at 4. Finally, the administrative judge considered the appellant's argument that he and the decedent created a common-law marriage in Pennsylvania prior to 2005 during one of their several overnight trips to the state but determined that the appellant failed to establish that they formed a valid common-law marriage in Pennsylvania on this basis. ID at 4.

---

[2] Elsewhere in the decision, OPM incorrectly identifies the length of the marriage as 7 months and 28 days. IAF, Tab 6 at 8.

¶5     The appellant has filed a petition for review challenging the administrative judge's finding that he failed to prove that he and the decedent entered into a valid common-law marriage under Pennsylvania law prior to 2005. Petition for Review (PFR) File, Tab 1. The agency has filed a response in opposition to the petition for review, and the appellant has filed a reply. PFR File, Tabs 4-5.

## DISCUSSION OF ARGUMENTS ON REVIEW

¶6     On review, the appellant does not appear to challenge the administrative judge's finding that, at the time of the decedent's death, he and the decedent had not been married for the 9 months required by statute for entitlement to a survivor annuity, based on their August 26, 2019 ceremonial marriage. PFR File, Tabs 1, 5. Instead, the appellant argues that the administrative judge misapplied Maryland law in determining that he failed to establish that he and the decedent formed a valid common-law marriage in Pennsylvania prior to 2005. PFR File, Tab 1 at 4-5. The appellant also rejects the administrative judge's assertion that he conceded that he could not establish the existence of a common-law marriage under Pennsylvania law, arguing that the administrative judge mischaracterized statements made by his representative during the hearing. PFR File, Tab 1 at 4, Tab 5 at 5; ID at 4.

Applicable legal standard

¶7     An individual seeking retirement benefits bears the burden of proving his entitlement to those benefits by preponderant evidence. *Cheeseman v. Office of Personnel Management*, 791 F.2d 138, 140-41 (Fed. Cir. 1986); 5 C.F.R. § 1201.56(b)(2)(ii). Under 5 U.S.C. § 8442(a)(1), if a decedent dies and is survived by a widower, that widower is generally entitled to a survivor annuity. Pursuant to 5 U.S.C. § 8441(2)(A), a "widower" is defined as the surviving husband of an employee for at least 9 months immediately before his death.[3] The

---

[3] Pursuant to 5 U.S.C. § 8442(e), a widower is not required to prove that he satisfied the 9-month marriage requirement if the decedent's death was "accidental." *See* 5 C.F.R. § 843.303(d)(1) (explaining the circumstances in which a death would be deemed

statute does not further define "marriage" or "husband." 5 U.S.C. § 8441. When the question of marriage is in doubt, OPM's regulations refer to state law for resolution. *See Donati v. Office of Personnel Management*, 106 M.S.P.R. 508, ¶ 6 (2007). To that end, OPM's implementing regulations define "marriage" as "a marriage recognized in law or equity under the whole law of the jurisdiction with the most significant interest in the marital status of the employee . . . ." 5 C.F.R. § 843.102; *see Charmack v. Office of Personnel Management*, 93 M.S.P.R. 667, ¶ 11 (2003). Additionally, the Board has held that "[a] common-law marriage is given effect under [F]ederal law retirement statutes if it is recognized under the relevant state law and meets the 9-month duration requirement." *Moore-Meares v. Office of Personnel Management*, 105 M.S.P.R. 613, ¶ 5 (2007). A party seeking to prove the elements of a common-law marriage may do so through either direct or circumstantial evidence. *Id.*, ¶ 6.

<u>The appellant cannot establish that he meets the 9-month marriage requirement based on his August 26, 2019 ceremonial marriage in Maryland under OPM's expanded interpretation of the relevant statutes and regulations.</u>

¶8      Before addressing the appellant's arguments on review, we must first consider what effect, if any, a recent notice issued by OPM has on the outcome of this appeal. During the pendency of this appeal, OPM issued a notice regarding awards of a survivor annuity or basic employee death benefits (BEDB) under the Civil Service Retirement System (CSRS) and FERS for same-sex spouses of deceased Federal employees or annuitants whose spouses died prior to meeting the 9-month marriage requirement identified in the relevant statutes. Civil Service Retirement System and Federal Employees' Retirement System; Notice to Same-Sex Spouses of Deceased Federal Employees or Annuitants Whose Marriages Lasted Less Than Nine Months (OPM Notice), 86 Fed. Reg. 64234-02

---

accidental for the purpose of satisfaction of the 9-month marriage requirement). The administrative judge did not make any findings on this point. Based on our review of the record, we clarify that the exception set forth at 5 U.S.C. § 8442(e) is not applicable here.

(Nov. 17, 2021). In the notice, OPM determined that, in light of the U.S. Supreme Court decisions in *United States v. Windsor*, 570 U.S. 744 (2013), and *Obergefell v. Hodges*, 576 U.S. 644 (2015), it would deem same-sex surviving spouse applicants of deceased Federal employees or annuitants to have satisfied the 9-month marriage requirement under 5 U.S.C. §§ 8431(a) and 8441(1)-(2) for the purposes of determining their entitlement to survivor annuity benefits or BEDB in the following circumstances: (1) if the applicant was in a same-sex marriage with the deceased employee or annuitant; and (2) but for the 9-month marriage requirement, the applicant would be eligible or a survivor annuity benefit/BEDB; and (3) the applicant was married to the deceased employee or annuitant prior to the Supreme Court's issuance of *Windsor* on June 26, 2013; or (4) the applicant was married to the deceased employee or annuitant within 1 year from the date of the Supreme Court's issuance of *Windsor* on June 26, 2013; or (5) the applicant was married to the deceased employee or annuitant within 1 year after the Supreme Court's issuance of *Obergefell* on June 26, 2015, when the couple resided in a jurisdiction that prohibited same-sex marriages at any time after *Windsor*. *Id.*

¶9    Applying OPM's revised interpretation of the statutes and regulations governing the awarding of survivor annuity benefits, in this case the appellant has established that (1) he was in a same-sex marriage with the decedent annuitant, and (2) but for the 9-month marriage requirement, he would have been eligible for a survivor annuity. OPM Notice, 86 Fed. Reg. 64234-02; IAF, Tab 6 at 27-29; *see* 5 U.S.C. §§ 8441(2)(A), 8442(a)(1), (e); 5 C.F.R. § 843.303(a)(1). Consequently, whether the appellant qualifies for a survivor annuity based on OPM's expanded interpretation of the 9-month rule turns on whether the appellant and the decedent were married prior to one of three milestones: (3) the issuance of *Windsor* on June 26, 2013; (4) within 1 year after the issuance of *Windsor* (that is, on or before June 26, 2014); or (5) within 1 year after the issuance of *Obergefell* (that is, on or before June 26, 2016), if they resided in a jurisdiction

that prohibited same-sex marriage at any time after *Windsor* was decided on June 26, 2013. OPM Notice, 86 Fed. Reg. at 64234-02, 64235-02. Based on the appellant's August 26, 2019 ceremonial marriage, he does not meet the requirements of (3) or (4). *See id.*; IAF, Tab 6 at 27-28. Additionally, because same-sex marriage has been legally recognized in Maryland since January 1, 2013 —the relevant jurisdiction in this case—(5) is inapplicable here. *See* Civil Marriage Protection Act, 2012 MD H.B. 438, § 2 (as recognized in *Conover v. Conover*, 146 A.3d 433, 448 (Md. 2016)); *see also* MD Code, Family Law, §§ 2-201, 2-202 (2013), *amended by* 2012 MD H.B. 438. Accordingly, we conclude that OPM's November 17, 2021 notice does not change the result here with respect to the appellant's August 26, 2019 ceremonial marriage and that the appellant failed to establish that he meets the 9-month marriage requirement under OPM's expanded interpretation of the relevant statutes and regulations.

The appellant and the decedent formed a common-law marriage in Pennsylvania prior to 2005 that Maryland would recognize as valid, and the appellant is entitled to a survivor annuity.

¶10     The appellant argues on review that the administrative judge misapplied Maryland law in concluding that he and the decedent failed to prove that they formed a common-law marriage in Pennsylvania. PFR File, Tabs 1, 5. Specifically, the appellant notes that he had provided a "plethora of evidence" showing that he and the decedent had "lived together for over three decades and were considered by their relatives/friends to be married" long before their August 2019 ceremonial marriage in Maryland. PFR File, Tab 1 at 4-5. He argues that the administrative judge erred by failing to consider the significant evidence of the existence of a common-law marriage prior to the ceremonial marriage and by failing to credit the record and testimonial evidence showing that he and the decedent completed several overnight trips to Pennsylvania prior to 2005 in concluding that they failed to form a common-law marriage in that state. *Id.*; PFR File, Tab 5 at 4-5. For the following reasons, we agree with the appellant

that the administrative judge erred by concluding that the appellant failed to prove that he and the decedent formed a valid common-law marriage under Pennsylvania law that Maryland would recognize, and we reverse the initial decision and order OPM to grant the decedent's election to provide a survivor annuity for the appellant.

¶11     As the administrative judge correctly observed, Maryland "does not recognize, and never has recognized, the institution of common law marriages." *John Crane, Inc. v. Puller*, 899 A.2d 879, 910 (Md. Ct. Spec. App. 2006). Nevertheless, Maryland has "continuously held that a common-law marriage, valid where contracted, is recognized in the state." *Id.* at 912 (quoting *Goldin v. Goldin*, 426 A.2d 410, 413 (Md. Ct. Spec. App. 1981)).  As the administrative judge also correctly noted, although Pennsylvania has abolished the doctrine of common-law marriage, common-law marriages contracted on or before January 1, 2005, remain valid in the state.[4]  23 Pa. Stat. and Const. Stat. Ann. § 1103 (West 2005); *Elk Mountain Ski Resort, Inc. v. Workers' Compensation Appeal Board*, 114 A.3d 27, 32-33 (Pa. Commw. Ct. 2015).  Under Pennsylvania law, the burden of proving a common-law marriage is on the party alleging the marriage. *PPL v. Workers' Compensation Appeal Board*, 5 A.3d 839, 843 (Pa. Commw. Ct. 2010). A common-law marriage can only be created by *verba in praesenti* (i.e., an exchange of words in the present tense) spoken with the specific purpose of creating the legal relationship of husband and wife.  *Elk Mountain Ski Resort*,

---

[4] We note that although the appellant indicated in a pleading below and during the hearing that he and the decedent had at least one overnight stay in Washington, D.C., he does not appear to allege that they formed a common-law marriage in the District of Columbia that Maryland would recognize, and the administrative judge also did not consider the appellant's arguments as alleging that he formed a common-law marriage in the District of Columbia.  IAF, Tab 9 at 90-94; HCD (testimony of appellant) (noting that the appellant and the decedent cohabited overnight in the District of Columbia on New Year's Eve in 1989); ID at 4; *see Gill v. Nostrand*, 206 A.3d 869, 874 (App. D.C. 2019) (acknowledging that the District of Columbia has "long recognized common-law marriages").  The appellant has not challenged this characterization of his argument on review, and so we have limited our discussion here to the appellant's claim that he and the decedent formed a valid common-law marriage in Pennsylvania.

114 A.3d at 32; *see In Re: Estate of Carter*, 159 A.3d 970, 979-82 (Pa. Super. Ct. 2017) (applying the same standard to evaluate the common-law marriage claim of a same-sex couple). Although no magic words are required, proof of the actual intention of the parties to form a marriage contract is indispensable to the existence of a common-law marriage under Pennsylvania law. *PPL*, 5 A.3d at 843. If a putative spouse "who is able to testify and fails to prove, by clear and convincing evidence, the establishment of the marriage contract through the exchange of *verba in praesenti*, then that party has not met its 'heavy' burden to prove a common-law marriage." *Elk Mountain*, 114 A.3d at 33.

¶12    However, when one party is unable to testify regarding the exchange of *verba in praesenti*, Pennsylvania law applies a rebuttable presumption in favor of a common-law marriage based on proof of: (1) constant cohabitation; and (2) a reputation of marriage "which is not partial or divided but is broad and general." *In Re: Estate of Carter*, 159 A.3d at 979 (quoting *Staudenmayer v. Staudenmayer*, 714 A.2d 1016, 1020-21 (Pa. Supr. Ct. 1998)). Such rebuttable presumption is "one of necessity" to be applied only in cases of the party's "inability to present direct testimony regarding the exchange of verba in praesenti." *Elk Mountain Ski Resort*, 114 A.3d at 33 (quoting *Staudenmayer*, 714 A.2d at 1021). Nevertheless, "[c]ohabitation and reputation are not a marriage; they are but circumstances from which a marriage may be presumed, and such presumption may always be rebutted and will wholly disappear in the face of proof that no marriage has occurred." *PPL*, 5 A.3d at 843. There is no basis to resort to the presumption if the claimant is available to directly testify to the words allegedly exchanged with the decedent. *Id.* Stated differently, "common law marriage will still be recognized without use of *verba de praesenti*, where the intention of the parties[,] as expressed by their words, is that they were married." *In Re: Estate of Carter*, 159 A.3d at 979 (quoting *Cann v. Cann*, 632 A.2d 322, 325 (Pa. Super. Ct. 1993)).

¶13 Because the decedent in this case is unable to testify regarding the exchange of *verba in praesenti*, we must evaluate whether the appellant can establish a rebuttable presumption that a common-law marriage exists by proving "constant cohabitation" between he and the decedent and "a broad and general reputation of marriage." *PPL*, 5 A.3d at 843. The administrative judge concluded that the appellant could not establish the elements of "constant cohabitation" and "a broad and general reputation of marriage" required to create a rebuttable presumption of a valid common-law marriage in Pennsylvania based on their several overnight stays in the state prior to 2005. ID at 4. Specifically, the administrative judge concluded that the evidence was insufficient to establish a common-law marriage in Pennsylvania because the appellant and the decedent had not provided any evidence that they expressed a "present intent to marry" while in Pennsylvania or that they had a general reputation as being married within Pennsylvania. ID at 4. He also highlighted testimony from the appellant's stepdaughter acknowledging that neither the appellant nor the decedent ever used the term "husband" in describing each other while in Pennsylvania.

¶14 However, both conclusions miss the mark. As previously set forth, the condition that a putative common-law spouse establish the exchange of *verba in praesenti*, or "words in the present tense" evidencing an intent to be married, is only required when the parties are able to testify as to the exchange of words. *Elk Mountain*, 114 A.3d at 33. Here, by contrast, when one of the parties is unable to testify, Pennsylvania applies a rebuttable presumption that a common-law marriage exists when a party can show constant cohabitation and a broad and general reputation of marriage, without requiring more. *In Re: Estate of Carter*, 159 A.3d at 979. Consequently, the administrative judge misapplied the applicable standard by finding that the appellant was required to prove that he and the decedent "expressed a present intent to marry in Pennsylvania" to prove that they established a common-law marriage in the state. ID at 4.

¶15        Regarding the first element, constant cohabitation, the evidence of the appellant and the decedent's long period of constant cohabitation is plentiful. With his application for a survivor annuity, the appellant provided numerous documents evidencing his enduring commitment to the decedent for over 30 years, including a purchase and sale agreement for the home where he and the decedent resided, an executed home insurance policy identifying himself and the decedent as "domestic partners," Thrift Savings Program (TSP) Designation of Beneficiary forms executed by the appellant[5] and the decedent naming each other as primary beneficiaries, advance health directives, durable power of attorney agreements, last will and testament documents executed by the appellant and the decedent for the benefit of each other, joint bills listing both the appellant and the decedent, sworn affidavits from the couple's friends and family members, and numerous photographs of the appellant and the decedent together on trips to several states during the period from 1989 to 2002.[6] IAF, Tab 6 at 14, Tab 9 at 12-116; *see In re Estate of McNeil*, 56 Pa. D. & C. 4th 77, 81-82 (Com. Pl. 2001) (noting that test for assessing the evidence supporting a common-law marriage claim "is a practical one requiring as much corroborative documentation and evidence as possible," and identifying additional evidence that could support such a claim, including the following: "(1) the execution of deeds as husband and wife; (2) the establishment of joint bank accounts; (3) the woman's use of the man's surname; (4) the parties' filing status on tax returns; (5) the wearing of wedding rings; (6) taking out of life insurance naming each other as spouse;

---

[5] The appellant is also a Federal employee with over 30 years of service. IAF, Tab 6 at 10.

[6] The appellant also testified at the hearing that he and the decedent purchased a vacation property in Pennsylvania in 2010 and spent significant time and money renovating and staying at the property. HCD at 13:15-15:10 (testimony of the appellant). Although not relevant to the issue of whether the appellant and the decedent created a valid common-law marriage in Pennsylvania prior to 2005, this provides additional evidence of their contacts to the state and of the long-lasting and continuous nature of their cohabitation.

(7) registering at a hotel as husband and wife; and (8) introducing one another as husband and wife.") (internal citations omitted).

¶16 The record also contains evidence that the appellant and the decedent cohabited in Pennsylvania as a couple prior to 2005, including photographs of their overnight trips to Hershey, Pennsylvania, in July 1997 and October 2002, and West Chester, Pennsylvania, in December 1997, and affidavits from the appellant's stepdaughter[7], the decedent's father, a neighbor and longtime friend, and the couple's realtor attesting to the fact that the appellant and the decedent frequently traveled to Pennsylvania on overnight trips and cohabited together during those trips, and that they understood the couple to be living together as a married couple. IAF, Tab 9 at 83-85, 89, 103-04, 107-09, 111-16. Additionally, the appellant's stepdaughter testified at the hearing that she often accompanied the appellant and the decedent during their frequent overnight trips to Pennsylvania and that during those trips, the couple stayed in a room together and viewed and understood the dynamics of their relationship as that of a married couple. IAF, Tab 12, Hearing Compact Disc (HCD) at 4:45-5:50 (testimony of appellant's stepdaughter).

¶17 Regarding the administrative judge's observation that Maryland legalized same-sex marriage in 2013 but the appellant and decedent chose not to marry until 2019, we find that this fact does not undermine the appellant's claim that he and the decedent considered themselves as married for many years prior to their 2019 ceremonial marriage. ID at 4. As one Pennsylvania court observed in the context of assessing a pre-*Obergefell* same-sex common-law marriage claim, "context matters" in common-law marriage cases, and consideration must be given to the fact that a same-sex couple alleging that they formed a common-law marriage on or before January 1, 2005, would not have had the right to have that union recognized as legal at that time. *See In re Estate of Carter*, 159 A.3d

[7] As the appellant notes on review, the administrative judge incorrectly identified the appellant's stepdaughter (the decedent's daughter) as the appellant's niece. Petition for Review (PFR) File, Tab 1 at 4; ID at 4.

at 974-980. The appellant testified during the hearing that he and the decedent consistently refereed to each other as "life partners" in describing the nature of their relationship together to others, and that they only decided to ceremonially marry in 2019 after the decedent received a terminal diagnosis that year and the appellant needed to be able to make certain decisions regarding the decedent's medical care. HCD at 19:35-22:30 (testimony of the appellant). Despite this, the appellant reaffirmed that nothing changed in his and the decedent's minds about the nature of their relationship with the 2019 ceremonial marriage, and that they had considered each other to be in a committed relationship akin to a marriage for decades prior to their ceremonial marriage—during the vast majority of which they were not legally permitted to marry in their state of residence. HCD at 23:00-23:50 (testimony of the appellant); IAF, Tab 6 at 11.

¶18    Additionally, as the appellant correctly notes on review, Maryland has viewed its obligation to recognize common-law marriages created in other states broadly, observing that Maryland "will, when the occasion demands, bend over backward to find a way around the ceremonial breach" to find that a common-law marriage contracted in another state was valid. *John Crane, Inc.*, 899 A.2d at 913. Indeed, Maryland courts have recognized a Pennsylvania common-law marriage as valid in instances when the couple's connections to Pennsylvania were even more remote than the appellant and the decedent's were here. *See Blaw-Knox Construction Equipment Company v. Morris*, 596 A.2d 679, 685-86 (Md. Ct. Spec. App. 1991) (finding that the complainant had presented sufficient evidence of a valid common-law marriage under Pennsylvania law to create a jury question on the issue where she established the following: she and the decedent took a single trip to the state in order to attend a funeral; the two spent two nights alone together in a motel in the state; the complainant met a number of the decedent's family members who "greeted and treated [the complainant]" as his wife during the trip; and by the time they took the trip, the complainant and the

decedent had been living together and holding themselves out as husband and wife for more than 30 years).

¶19     There is also some indication that Maryland courts may view the "reputation for marriage" element for establishing a Pennsylvania common-law marriage permissively and that the reputation for marriage need not be constrained to a Pennsylvania community. *See John Crane, Inc.*, 899 A.2d at 914 (finding sufficient evidence of a common-law marriage based on the facts of that case for a jury question on the issue, acknowledging that based on the court's prior decision in *Blaw-Knox*, "[e]ven the element of 'reputation in Pennsylvania' may not be an irreducable [sic] *sine qua non*," noting that the *Blaw-Knox* court "quoted with approval" a New York state court opinion finding that cohabitation and reputation in the state of *New York* was sufficient to establish a common-law marriage under Pennsylvania law) (quoting *Blaw-Knox Construction Equipment Company,* 596 A.2d at 687).

¶20     Finally, other states to have considered this issue have similarly interpreted Pennsylvania's recognition of common-law marriages broadly. *See Renshaw v. Heckler*, 787 F.2d 50, 52-54 (2d Cir. 1986) (finding sufficient evidence of cohabitation and a reputation for marriage to establish a common-law marriage in Pennsylvania based on the New York couple's eight out-of-state trips to Virginia and North Carolina over the course of 9 years that included overnight stays in Pennsylvania, when the couple cohabitated during their stays in Pennsylvania and their interactions with the local Pennsylvania community were limited to making dinner reservations as a married couple and a coincidental meeting with a family member); *McCullon v. McCullon*, 410 N.Y.S.2d 226 (N.Y. Sup. Ct.1978) (finding a valid common-law marriage between two New York residents who vacationed in Pennsylvania for two to four weeks at a time over nearly 30 years); *Skinner v. Skinner*, 150 N.Y.S.2d 739 (N.Y. Sup. Ct. 1956) (finding that two New York residents formed a valid common-law marriage under Pennsylvania law on the basis of a three week visit to the state); *cf. Charmack*, 93 M.S.P.R. 667, ¶¶ 8, 16

(finding insufficient evidence of a broad and general reputation for marriage in Pennsylvania where the evidence supporting the common-law marriage claim was limited to testimony from the appellant's son stating that the appellant had introduced the decedent to him as "his 'girl'" during an overnight stay in Pennsylvania in 1992, but that the son did not know whether the appellant and the decedent were regarded as husband and wife in the community or whether they came in contact with anyone else during their stay in Pennsylvania).

¶21    Based on the foregoing, we conclude that the administrative judge erred by finding that the appellant failed to establish that he and the decedent had formed a common-law marriage in Pennsylvania prior to 2005 based on their repeated and frequent overnight trips to the state, and that Maryland would recognize that common-law marriage as valid.  The record is replete with evidence that the appellant and the decedent were in a lengthy and committed relationship and that they publicly and repeatedly reaffirmed their commitment to that relationship on numerous occasions in Pennsylvania prior to 2005, and they therefore have established that they formed a valid common-law marriage under applicable Pennsylvania law.  The fact that the law precluded them from marrying and enjoying the shared title of "husband" for the vast majority of their lengthy and committed relationship is ultimately immaterial to the question of whether they viewed their relationship as one that was on equal footing to that of a married couple.

## ORDER

¶22    Accordingly, we ORDER OPM to award the appellant survivor annuity benefits.  OPM must complete this action within 20 days of the date of this decision.

¶23    We also ORDER OPM to inform the appellant of all actions taken to comply with the Board's order and of the date on which it believes it has fully complied.  *See* 5 C.F.R. § 1201.181(b).  We ORDER the appellant to provide all

necessary information that the agency requests in furtherance of compliance. The appellant should, if not notified, inquire about the agency's progress.

¶24    Within 30 days of the agency's notification of compliance, the appellant may file a petition for enforcement with the regional office to resolve any disputed compliance issue or issues. The petition should contain specific reasons why the appellant believes there is insufficient compliance and should include the dates and results of any communications with the agency about compliance. *See* 5 C.F.R. § 1201.182(a).

¶25    This is the final decision of the Merit Systems Protection Board in this appeal. Title 5 of the Code of Federal Regulations, section 1201.113(c) (5 C.F.R. § 1201.113(c)).

## NOTICE TO THE APPELLANT REGARDING YOUR RIGHT TO REQUEST ATTORNEY FEES AND COSTS

You may be entitled to be paid by the agency for your reasonable attorney fees and costs. To be paid, you must meet the requirements set out at Title 5 of the United States Code (5 U.S.C.), sections 7701(g), 1221(g), or 1214(g). The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.203. If you believe you meet these requirements, you must file a motion for attorney fees and costs WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your motion for attorney fees and costs with the office that issued the initial decision on your appeal.

## NOTICE OF APPEAL RIGHTS[8]

You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b).

---

[8] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you <u>only</u> if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—<u>including a disposition of your discrimination claims</u>—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** <u>after you receive</u> this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** <u>after your representative</u> receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of <u>your discrimination claims only, excluding all other issues</u>. 5 U.S.C. § 7702(b)(1). You must file any such request with the

EEOC's Office of Federal Operations within **30 calendar days** <u>after you receive</u> this decision.  5 U.S.C. § 7702(b)(1).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** <u>after your representative receives</u> this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

> Office of Federal Operations
> Equal Employment Opportunity Commission
> P.O. Box 77960
> Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

> Office of Federal Operations
> Equal Employment Opportunity Commission
> 131 M Street, N.E.
> Suite 5SW12G
> Washington, D.C.  20507

**(3) <u>Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012</u>**.  This option applies to you <u>only</u> if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D).  If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[9]  The court of appeals must <u>receive</u> your

---

[9] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of

petition for review within **60 days** of the <u>date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

> U.S. Court of Appeals
> for the Federal Circuit
> 717 Madison Place, N.W.
> Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

---

MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

*Gina K. Grippando*

FOR THE BOARD:    _____

Gina K. Grippando
Clerk of the Board

Washington, D.C.